THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CECIL COOPER, Defendant-Appellant.

(No. 56262;

First District—December 8, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Ronald F. Neville, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

*OFFENSE CHARGED*

Armed robbery. Ill. Rev. Stat. 1969, ch. 38, par. 8—2.

*JUDGMENT*

After a bench trial, defendant was found guilty and sentenced to a term of not less than three nor more than six years.

*CONTENTION RAISED ON APPEAL*

The identification procedures employed by the police were so highly suggestive and conducive to mistaken identity that the introduction of the pre-trial identification was a denial of defendant's due process rights which tainted the victim's in-court identification of defendant as her robber.

*EVIDENCE*

*Juanita Akin,* for the State:

On July 2, 1970, she was at 1405 E. Marquette Road, Chicago, Illinois, alone in a cleaning store which she owned. A young black man came in between 5:30 and 5:45 P.M. The front of the store was lit by four big fluorescent lights, and she had no difficulty in seeing him. He was between 19 to 23 years old, between 5'8" and 5'10" tall, and weighed from 148 to 150 pounds. She noticed that the skin around one of his eyes was a little darker than the rest of his complexion, as if he had a black eye. He was wearing a short, midnight blue, wet-look jacket, and light beige pants with gold stripes. She could not recall everything that he had been wearing because she could only see him from the waist up. He stayed in the store about 15-20 minutes.

He gave her his name and address and explained that he wanted to pick up his cleaning but that he had lost his ticket. She did not recall having a customer by that name and when he asked where the owner of the store was, she did not identify herself as the owner but answered that the owner was in his car around the corner. The man said he would wait to speak with the owner. While waiting, he asked her if she had a dog, and when she said yes, he walked to the back of the store to see if he could see it. As he returned to the front of the store, he stuck his hand into his right jacket pocket, partly pulled out a gun, and said, "This is a stick-up." She opened the register and gave him about $75. He asked, "Are you sure that is all?" and although she answered yes, he boosted himself up onto the counter to look into the register for himself. As he was leaving the store, he said, "Don't call the police because I don't want to have to come back and kill you."

On leaving the store, he turned west on Marquette Road. She walked out to the sidewalk and saw him running down the street. She noticed that as he crossed over to the north side of the street and ran under a viaduct, he passed a man who was walking east on the south side of Marquette Road. As this man approached the store, she asked him if he

knew the name of the man who had just run past him in the street. When he answered that he only knew him by sight, she said she would appreciate it if he could find out the name for her. The man with whom she spoke did not identify himself to her.

She then went back into the store and notified the police of the robbery. Two uniformed police officers arrived shortly, and she gave them a description of the robber, but did not tell them about her conversation with the man who said he knew the robber by sight.

Two days later, the unidentified man came into her store and told her that the name of the man who had run past him in the street was Cecil Cooper. Again, he did not give her his own name. As a result of that conversation, she immediately called the police station and told an officer the name which the man had given her.

On or about July 9, 1970, two detectives, not in uniform, came to the store and showed her photographs of six to eight young black men. She indicated to the officers that she recognized one of the men as being the person who had robbed her. There were no names on the fronts of the photographs, and during her viewing of them, she did not see the backs of the photographs. After she selected the picture of the man she recognized, the officer turned the picture over and showed her that the name Cecil Cooper was printed on the back. She did not attend a line-up.

About four months after the robbery, she received word from the police that they had caught Cecil Cooper. She went to Boys Court in order to testify, and saw defendant brought out before the judge and heard the name Cecil Cooper called out. She could not recall whether she signed the complaint charging defendant with armed robbery before or after she saw him in the courtroom.

During the trial, she identified six pictures as being those which had been shown to her by the detectives about a week after the robbery, and she again indicated defendant's picture as being that of the man who had robbed her. She also made an in-court identification of defendant in person.

*Robert L. Tyson,* for the State:

He is the police officer who, around July 4, 1970, was assigned to investigate the robbery of Juanita Akin. Prior to his going to Mrs. Akin's store, he read a Supplementary Report on the robbery which named Cecil Cooper as the man involved, so he took six photographs to show to Mrs. Akin, one of them Cecil Cooper's. He handed her the photographs in a stack, and after she had looked at the faces of all of them, she indicated the picture of Cecil Cooper as that of the man who had robbed her. He did not show her the backs of the photographs until after she had se-

lected defendant's picture, at which time he turned it over so that she could read the defendant's name which was printed on the back. He did not make any notation as to which other photographs he had shown her.

He made two written reports in connection with this case. These two reports, introduced into evidence, conflict somewhat with the testimony he gave at trial as to the chronological sequence of his investigation. Although he testified that he showed photographs to Mrs. Akin on or about July 9, 1970, he also testified that he had not spoken with her prior to writing the first report, and that report was dated July 20, 1970. Also, that report said nothing about his having shown photographs to the robbery victim or of her having identified the robber from the pictures. His supplementary report, dated December 14, 1970, stated that an unidentified person had witnessed the robbery and had given Mrs. Akin the name of the robber as Cecil Cooper. The report then stated that he obtained the photograph of defendant and five other pictures of young black men and took them to the victim's store to see if she could identify any of them as the robber. His report concluded by stating that she identified the defendant's photograph.

On December 1, 1970, he arrested the defendant for the robbery of Mrs. Akin.

*Laval Wafer*, for the State:

He is a police officer. At about 5:30 P.M. on July 2, 1970, he and another officer were on routine patrol in a two-man squad car when they received a radio call to proceed to 1405 E. Marquette Road in Chicago. When he arrived at that address, he had a conversation with Akin, who informed him that she had been robbed, that the robber had worn a shiny blue jacket and white pants, and that the robber had fled west on Marquette Road after leaving the store. She told him that the robber had said, "Give me the money," and that he had been in the store about five minutes. She did not report any other conversation between herself and the robber. He recorded the description and other information in his police report and processed the complaint.

*Cecil Cooper*, in his own behalf:

On July 2, 1970, he was at his home at 6133 S. Woodlawn, Chicago, with his wife, his four children, and about 20 other people. They were having a baby shower for his youngest son who had just come home from the hospital. The guests began to arrive at about 4:00 P.M. and stayed until 11:30 or 12:00 P.M.

From 4:00 P.M. on, for the duration of the party, he never left the house, but stayed in the living room playing cards and talking with his friends. He did not go to 1405 E. Marquette on July 2, 1970, and he had never been there before that date to take in cleaning or otherwise.

He works as a fork lift operator from 8:00 A.M. until 3:00 P.M. On July 2, 1970, his foreman punched him out early, about 2:30 P.M., so that he could go home for his son's party. There was a conflict in his testimony when, at one point, he said that he had not worn a coat to work that day, while, at another point, he said that he had been wearing a coat, but that it was not blue. In any event, he said he does own a wet-look jacket, but it is three-quarter length and red..

On December 1, 1970, he was walking down the street when Officer Tyson, sitting in a squad car, called out his first name. He walked over to the police car and the officer told him he was arresting him for armed robbery and took him to the station. He denied having committed the robbery or of having any knowledge of it. No gun was found on his person at the time of his arrest.

He was on probation at the time, as earlier that year he had pleaded guilty to charge of armed robbery and had been placed on probation for four years.

Prior to trial, defendant moved to suppress all identification evidence. The court took the motion with the case and at the conclusion of the State's case, the motion was denied. Defendant now appeals, alleging that the denial of his motion to suppress and the admission of the in-court identification constituted error.

Defendant contends that because he was identified as a suspect by name, and because he was on probation and readily available to the police, the police should have arrested him and conducted a fair line-up instead of having the robbery victim identify him by photograph. Defendant also contends that if the victim had not been sure that the defendant had been the robber, she could have made a mis-identification of him on the basis of seeing his name printed on the back of the photograph and by her then seeing him brought into court after his name had been called. Defendant insists, also, that with the contradictions in Officer Tyson's testimony regarding the photographic identification, it is impossible to determine if the pre-trial identification procedures were fair and that, therefore, both the pre-trial and the in-court identifications should have been suppressed.

■■ In *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, the Supreme Court recognized the potential for incorrect identifications with the use of photographs, but was willing to constitutionally prohibit such identification procedures. Instead, it held that

> "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly

suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

The Illinois courts have held that irregular as the pre-trial identification procedures might seem, and this is not to suggest that we so find the procedures in the instant case, denial of due process depends on whether the identification at trial was dependent upon or influenced by a suggestive pre-trial identification, or whether, under the totality of the circumstances, the witness' identification had a prior, adequate and independent origin. *People v. Martin*, 47 Ill.2d 331, 335-339, 265 N.E.2d 685, 688-689, *cert.* den. 403 U.S. 921; *People v. Rodgers*, 3 Ill.App.3d 85, 92-94, 279 N.E.2d 72, 77-78.

■■ In the instant case, Mrs. Akin had ample opportunity at the time of the robbery to form an independent and prevailing basis for her identification of defendant. She conversed with him for 15-20 minutes in a well-lit store before the robbery took place. When the officers came in response to her call, she was nervous, but still able to give a rather remarkably detailed description of the robber which turned out to coincide with defendant's appearance.

■■ Defendant also urges a dereliction of duty by the police in that they did not try to locate the unidentified witness. However, it is undisputed in Illinois that when the identification of a defendant is in issue, the testimony of a single eyewitness, if credible, is sufficient for a conviction. (*People v. Moore*, 42 Ill.2d 73, 77, 246 N.E.2d 299, 302; *People v. Watkins*, 46 Ill.2d 273, 281, 263 N.E.2d 115, 120.) Since Mrs. Akin was a credible eyewitness, the fact that the unidentified witness was not located or produced to testify at trial was not prejudicial to defendant.

The judgment is affirmed.

Affirmed.

LORENZ, P. J., and DRUCKER, J., concur.