THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT JACKSON, Defendant-Appellant.

(No. 56993;

First District (3rd Division)—November 7, 1974.

James J. Doherty, Public Defender, of Chicago (Lee T. Hettinger, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Patricia Bobb, and Michael Epton, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial, defendant Robert Jackson was found guilty of murder and sentenced to serve a term of 14 to 25 years in the penitentiary. Defendant appeals, contending that (1) the trial court erred in admitting into evidence a statement of the deceased that defendant shot him; (2) the trial court erred in allowing officers to testify that they advised him of his rights and had a conversation with him; (3) he was not proved guilty beyond a reasonable doubt; and (4) the instructions to the jury were not adequate.

The indictment charged defendant with three counts of murder in that he shot and killed James Owens with a gun (1) intentionally and knowingly; (2) knowing that such shooting created a strong probability of death or great bodily harm; and (3) while committing a forcible felony, to wit, armed robbery (Ill. Rev. Stat. 1969, ch. 38, pars. 9—1, 9—1(a-2), and 9—1(a-3)).

At trial, Michael Blake testified for the State that he and Owens, the deceased, were walking home in the early morning hours of August 3, 1970, after drinking earlier at a couple of bars. They approached the intersection of 51st Street and Cottage Grove Avenue, in Chicago, when the following took place. Two men came from the rear; one of them, the defendant, asked Blake and Owens where they were going. Receiving no reply, defendant asked if they could walk with them and Owens said, "No, you may not." Defendant then pulled out a gun and announced that it was a stickup. The other man was not armed. Complying with defendant's demand, Blake threw down his wallet. Owens told them they could have anything they wanted, but he pulled out a gun from the book bag he was carrying. Blake saw defendant fire. Owens told him to run and he ran across 51st Street, then west to the bar from which they had come. He told the bartender to call the police, then he immediately returned to the scene of the shooting where he found Owens lying face up in the street with a stomach wound. Owens said, "He shot me."

The witness further testified that he saw two men helping another around the corner of a building and that the third man appeared to be limping. When defendant was pointing the gun he was facing Blake and the lighting was good; he could see that defendant was wearing dark clothing and had some sort of deformity of his teeth. On cross-examination he again testified that the armed assailant was wearing dark clothing but that his attention at that time was focused on the gun and his face. Owens and the witness were approximately 4 feet from the assailant when the latter fired the first shot. Blake testified that he identified defendant at the coroner's inquest as the armed assailant, and stated

that "there were no other black males sitting with Mr. Jackson at the inquest."

The State called two police officers who testified that they were present at the hospital where defendant was admitted for treatment of a bullet wound in the leg. Officer Bobko testified that he responded to a police broadcast and had seen defendant at Billings Hospital; that defendant was lying in the emergency room, and the clothing on the floor around him was "dark and almost matching."

Officer Jannotta, whose testimony is hereafter more fully detailed, stated that he also found the defendant at Billings Hospital.

Troy Harris testified for the defense that on the evening in question he heard some shooting as he was coming out of a bar. After the shooting stopped he heard defendant call his name, and defendant told him he had been shot. Harris carried defendant across the street and flagged down a friend who drove them to the hospital. He further testified that at the time defendant was wearing light-grey pants and a matching shirt.

Defendant's mother testified that her son was wearing light-grey pants on the evening of the shooting. The pants were marked for identification but were not introduced into evidence. On cross-examination she testified that the pants she picked up from the hospital had been worn by the defendant and his brothers.

Defendant testified on his own behalf that as he was returning home from listening to a group of friends sing he saw four men standing on the sidewalk. As he passed he heard them arguing, then heard gun shots. He ducked to the ground and was shot in the kneecap. He saw Blake running west on 51st Street after the shooting. Harris picked him up, rushed across the street and stopped a friend, Carol, who drove them to the hospital. Defendant further testified that he was wearing light-grey khaki pants, referring to the trousers which were marked for identification. He stated that he was given a shot at the hospital; he did not remember talking to a police officer nor seeing Officers Bobko or Jannotta at Billings Hospital; and he denied possession of a gun and participation in a robbery. He testified—as did his mother—that he was wearing a short natural haircut on the evening in question. On cross-examination defendant denied talking to Officer Jannotta at the hospital. The prosecutor then read from the transcript of a previous bond hearing in which defendant admitted talking to a policeman concerning the incident. The prosecutor asked defendant, "Do you remember telling Officer Jannotta that you weren't even at 51st Street and Cottage Grove?" Defendant denied the statement and defense counsel objected to the question and requested that it be stricken and the jury be instructed to disregard it.

At this point in the proceedings the court admonished the prosecutor

that he could establish impeachment by having Officer Jannotta state that he talked to defendant but not the substance of the conversation. The trial court struck the question and answer and instructed the jury to disregard them. Defendant then stated a policeman asked him something at Cook County Hospital and that he did not remember testifying at the bond hearing; that he had talked to a lot of policemen.

On redirect examination defendant stated that he did not remember what the policemen said to him or what he said to them. Defense counsel then asked defendant if he remembered denying [apparently at the bond hearing, although the record is not clear as to this point] being at 51st Street and Cottage Grove, to wh'ch defendant answered "No". The instructions given to the jury included the following Illinois Pattern Instructions—Criminal, which are relevant to defendant's argument on appeal:

IPI—Criminal No. 7.01

"A person commits the crime of murder who kills an individual if, in performing the acts which cause the death,

he intends to kill or do great bodily harm to that individual; or
he knows that such acts will cause death to that individual; or
he knows that such acts create a strong probability of death or great bodily harm to that individual; or he is attempting to commit or is committing the crime of armed robbery."

IPI—Criminal No. 7.02

"To sustain the charges of murder, the State must prove the following propositions:

First: That the defendant performed the acts which caused the death of James Owens;

Second: That when the defendant did so, he intended to kill or do great bodily harm to James Owens, or

he knew that his acts created a strong probability of death or great bodily harm to James Owens; or

he was attempting to commit or was committing the crime of Armed Robbery.

    \*    \*    \*"

IPI—Criminal No. 14.01

"A person commits the crime of armed robbery who, while armed with a dangerous weapon, takes property from the person or presence of another by the use of force or by threatening the imminent use of force."

After the jury had begun its deliberations it indicated to the court that it had a question, and in open court the foreman asked the court the following:

"Well, we had·a question regarding the incident itself: Now if the defendant was believed to be a part of the actual incident would he in fact then be considered as committing the act himself? In other words, he had to personally commit the crime? Is it necessary for the prosecution to prove that the defendant actually fired the shot?"

The court heard the arguments of both counsel out of the presence of the jury. The State requested an accountability instruction. The defense made no request for additional instructions. The court then told the jurors that they had heard all of the evidence in the case and. had been instructed on the law, and to retire to the jury room and continue their deliberations. The jury later returned a verdict finding defendant guilty of murder, and sentence was imposed.

## I.

■■ We first address the issue of whether the trial court erred in admitting into evidence the statement of the deceased that the defendant shot him. Defendant argues that an objection to the question was made and that the statement is inadmissible as a dying declaration. The record shows that the only objection made was that question was leading. The State responds that the statement of the deceased was admissible as an exception to the hearsay rule as a spontaneous declaration. We need not determine whether the statement comes within the exception. Defendant's objection was not as to the relevancy of the statement but only to the form of the question. We have examined defendant's post-trial motion and find no reference to this particular objection. A ground of objection not presented in the trial court will not be considered for the first time on review. *People v. Canaday* (1971), 49 Ill.2d 416, 275 N.E.2d 356.

## II.

Defendant next maintains that the trial court erred in allowing the police officers to testify that they warned him of his constitutional rights at the hospital. He further contends that prejudicial error occurred when the prosecutor introduced before the jury a statement by defendant which the trial court had ruled inadmissible as involuntary.

During the presentation of the State's case-in-chief, Officer Jannotta testified that he spoke with defendant at Billings Hospital. Defense counsel objected and a hearing was held out of the presence of the jury. During that hearing the prosecution stipulated that the officer would testify that defendant told him he was not at the scene of the crime. Prior to trial, defendant moved for a list of witnesses to any oral statement to which the State filed an answer that defendant had made no

statement. Defendant was not given the name of Officer Jannotta as such witness and claimed surprise. The court found that the State's failure to furnish this information was inadvertent and held a hearing on defendant's motion to suppress the statement. After hearing testimony from the defendant and Officers Bobko and Jannotta, the court found that the statement of defendant was inadmissible. The court specifically found that although defendant was advised of his constitutional rights, he was not capable—due to the medication he received at the hospital—of understanding and voluntarily waiving his right to remain silent. On cross-examination defendant was asked if he remembered telling Officer Jannotta that he was not at 51st Street and Cottage Grove. The court struck the question and answer and instructed the jury to disregard it. On redirect examination defense counsel questioned defendant concerning the same statement. In rebuttal Officer Jannotta testified that he advised defendant of his constitutional rights at the hospital and had a conversation with him. Officer Bobko testified on rebuttal that he had a conversation with defendant at Billings Hospital on the night in question.

Defendant maintains that prejudicial error resulted because the jury heard that he was warned of his constitutional rights and had a conversation with a police officer. Defendant contends that as a result the jury was free to speculate as to the substance of the conversation. We note that no specific objection to this portion of the officers' testimony, other than leading, was raised at trial. Moreover, defendant denied having any conversation with police officers at Billings Hospital. The argument was not raised in defendant's post-trial motion. It has been held that "Where the grounds for a new trial are stated in writing, the accused is limited on review to the errors alleged therein and all other errors are deemed to have been waived." (*People v. Hairston* (1970), 46 Ill.2d 348, 367, 263 N.E.2d 840.) Nonetheless, notwithstanding the above facts and the holding in *Hairston*, we believe defendant's argument merits discussion.

■■ Defendant relies on *People v. Mwathery* (1968), 103 Ill.App.2d 114, 243 N.E.2d 429, and *People v. Dukes* (1957), 12 Ill.2d 334, 146 N.E.2d 14. Although factually not on point, those cases stand for the general principle that regardless of the innocent or culpable motives of the prosecutor, prejudicial error results from conduct and argument the cumulative effect of which is to inflame the passion and arouse the prejudice of the jury against the defendant, without aiding the jury in weighing or evaluating the evidence. In the instant case, regardless of the prosecutor's obvious purpose to impeach the credibility of defendant, we must determine whether the effect of such testimony was to arouse

the prejudice of the jury against the defendant. Defendant argues that the jury could have speculated that he either made no statement or admitted participation in the crime. Nevertheless, they could also have speculated that defendant and the officers conversed concerning facts to which defendant testified as being his theory of the case. But speculation is not the test. The test is whether the substance of the testimony aroused the prejudice of the jury against the defendant. The testimony consisted only of a statement that a conversation was had and rights given, but did not include any conversation. We conclude that such testimony is not inflammatory and did not arouse the prejudice of the jury.

Defendant next argues that prejudicial error resulted in the introduction before the jury of a statement by defendant which the trial court had previously ruled involuntary and inadmissible. Defendant maintains that the State accomplished by indirection what it could not have done directly. In support he cites *People v. Maggio* (1927), 324 Ill. 516, 155 N.E. 373; *People v. Adams* (1953), 1 Ill.2d 446, 115 N.E.2d 774; and *People v. Pughsley* (1966), 73 Ill.App.2d 442, 220 N.E.2d 89.

In *People v. Lefler* (1967), 38 Ill.2d 216, 220, 230 N.E.2d 827, the supreme court held that "the voluntary character of any out-of-court statement must first be established before the statement may be used, even for impeachment purposes." And in *People v. Roy* (1971), 49 Ill.2d 113, 273 N.E.2d 363, the supreme court again held that the admissibility of any statements, incriminating or exculpatory, are governed by the rules set forth in *Miranda v. Arizona* (1966), 384 U.S. 436. In the case before us, the State admits in its brief that the use of the statement for purposes of impeachment was improper. However, the State maintains that the striking of the question and answer and instruction to the jury to disregard the same cured any error. Upon examination of the cases cited by defendant, we note that there the statements were either written confessions or highly incriminating statements. In *Pughsley, supra*, we held that the trial court's instruction to the jury to disregard certain rebuttal testimony for the State was not sufficient to cure the error. The State was allowed to impeach the defendant by the rebuttal testimony of an officer as to a statement the defendant made to him at the time of arrest. On cross-examination the defendant was asked if he remembered telling the officer that he crawled through the screen which he broke. Defendant denied the statement and the court permitted the officer to testify thereto.

In the instant case, unlike *Pughsley*, the statement was purely exculpatory. In *Pughsley*, reference was made to the statement before the jury, twice by the prosecution and once by the judge. Here, one isolated reference was made to the substance of the conversation, and after the

instruction no further reference was made to it. Considering the nature of the statement, the lack of attention drawn to it, and the prompt instruction of the court, we hold that the instruction was adequate to remove any error or prejudice in its admission. See *People v. Phillips* (1970), 126 Ill.App.2d 179, 188, 261 N.E.2d 469.

### III.

Defendant next maintains that he was not proved guilty beyond a reasonable doubt. He first argues that the inadequacies, omissions and discrepancies in the testimony of the identification witness lead to the conclusion that there was no independent basis for the identification. He relies upon *People v. Cullotta* (1965), 32 Ill.2d 502, 504, 20 N.E.2d 444, and *People v. Betts* (1968), 101 Ill.App.2d 322, 326, 243 N.E.2d 282, which held that "a conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused was vague, doubtful, and uncertain.'" We have held, however, that the testimony of a single witness, if it is positive and the witness is credible, is sufficient for a conviction even though the testimony is contradicted. (*People v. Cooper* (1972), 9 Ill.App.3d 291, 292 N.E.2d 79.) Furthermore, precise accuracy in describing facial characteristics and wearing apparel is unnecessary where an identification is positive. (*People v. Bell* (1974), 18 Ill.App.3d 130, 309 N.E.2d 344 (abstract opinion); *People v. Winfrey* (1973), 11 Ill.App.3d 164, 168, 298 N.E.2d 413.) In the instant case Blake positively identified defendant as the assailant with the weapon. He described defendant's tooth deformity and his clothing to the officer who appeared at the scene. Defendant's argument that the witness's identification of him at the coroner's inquest was suggestive is without merit. There is no evidence that this identification was suggestive. Furthermore, it has been held that a prior independent origin of a witness's identification can furnish protection against an allegedly subsequent suggestive identification. *People v. Mays* (1971), 48 Ill.2d 164, 269 N.E.2d 281; *People v. Tolefree* (1973), 14 Ill.App.3d 754, 303 N.E. 2d 555.

### IV.

Defendant's final argument is that the instructions given were not adequate to answer the question of the jury after deliberations had commenced. It appears, however, that the precise question to be answered is whether the jury could have found the defendant guilty with the instructions given. Defendant contends that the jury should have been given an accountability instruction, and argues that without such instruction they could not have found the defendant guilty of felony-murder.

We disagree.

■■ In *People v. Brothers* (1932), 347 Ill. 530, 180 N.E. 442, the defendant allegedly shot the deceased in an underground passageway and fled. No one saw the defendant fire the shot, but witnesses testified to seeing him flee. An instruction on aiding and abetting was given. The supreme court stated at page 539:

> "While the record contains some evidence tending to show that one or two persons were with the actual assailant just before the killing and rushed up the stairs with him immediately thereafter, still, it is apparent that the prosecution was based upon the theory that defendant was the actual assailant and not an accomplice. Under the circumstances there was really no substantial basis for giving these two instructions."

In *People v. Danner* (1969), 105 Ill.App.2d 126, 130, 245 N.E.2d 106, it was held: "If the evidence establishes that defendant was attempting to commit a forcible felony and the victim's death was a result of that attempt, it is immaterial who fired the particular shot which killed the victim or whether the killing was intentional or accidental." Therefore, any speculation by the jury in the instant case could have only favored the defendant. The cases cited by defendant are not on point. In *People v. Harmon* (1968), 104 Ill.App.2d 294, 297, 244 N.E.2d 358, the court found error in the trial court's failure to instruct the jury as to the law applicable to the accidental discharge of a weapon resulting in the death of a third person where there were sufficient facts in the record to cause the jury to consider that factual question. In *People v. Davis* (1966), 74 Ill.App.2d 450, 221 N.E.2d 63, the court held that the trial court should have given, sua sponte, proper instructions to the jury. In that case the defendant was found guilty of attempted robbery. The jury was instructed only as to attempt and no instruction was given defining the elements of the offense of robbery. In the instant case, the defendant did not request an additional instruction when the jury presented its question to the court. Any speculation by the jury as to who fired the shot could only have favored defendant. The failure of the court to instruct the jury on accountability resulted in no prejudice to the defendant.

For the reasons stated above, the judgment is affirmed.

Affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.