THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FREDERICK McGEE, Defendant-Appellant.

First District (5th Division)   No. 61243

Opinion filed May 14, 1976.

Gary L. Blank, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of the offenses of rape (Ill. Rev. Stat. 1973, ch. 38, par. 11—1) and armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2) and sentenced to 4 to 12 years imprisonment. On appeal, he contends that: (1) he was identified in an unconstitutionally suggestive one man show-up and (2) he was not proved guilty beyond a reasonable doubt.

The following pertinent evidence was adduced at trial.

*For the State:*

*Regina Boyd*

She is married and resides with her husband Gene. At approximately 8 p.m. on February 2, 1971, she left her home to walk three blocks to her sister's house. Although it was not quite dark the streetlights were on. In the vicinity of Ohio Street and Homan Avenue, defendant approached and as he walked alongside of her he pointed a handgun at her temple. He demanded her money and after they walked a quarter of a block he led her into the hallway of a building at 636 North Homan. After demanding her purse he then took the $55-$60 from inside it.

He then indicated that he intended to rape her. She specifically asked him if he had a wife or children and he said yes. She then suggested that he "go to his wife." Nonetheless with the gun at her temple defendant led her out of the hallway and into an adjoining building where he told her to remove her underclothing. He then led her to an abandoned garage behind the first building where she was forced to remove her coat and dress and lie down on the garage floor. With the gun pointed at her temple, he then forced her to have intercourse. She did not look at his face during the 3 or 4 minutes before he climaxed because his face was on hers. After he finished he used her scarf to wipe his penis and left the garage. She ran to her sister's house and immediately phoned the police. She was taken to a hospital where a sperm culture test was performed.

In April, 1971, she saw defendant standing behind her at the checkout counter in a local grocery store. She did not leave the store after paying for her groceries. Defendant walked towards the exit, stopped, looked at her for 2 to 3 minutes, and then left the store. Although she and her husband toured the neighborhood, they were unable to find defendant. After they arrived home she called the police station and reported the incident.

In October, 1973, she spotted defendant in the vicinity of Ohio and Christiana. She called the police and was present to identify defendant when he was arrested near the corner of Christiana and Huron.

On cross-examination, she admitted that the abandoned garage was not lighted. On February 2, 1971, she had described her assailant as having hair with a nappy texture and as wearing a short coat, blue pinwale pants, a cap, and black gloves. Although she admitted selecting an incorrect mug shot previously, she had told the police that she would have to see the actual person, not a picture, because she would never forget his face. When the police arrived in October, 1973, she pointed defendant out from a group of men who were standing together.

On redirect, she stated that although it was semidark in the garage, she had been able to get a good look at her assailant's face.

*Ethel Russell*

She is Regina Boyd's sister. Regina arrived at her apartment on February 2, 1971, in a hysterical condition. Over objection, she was allowed to state that Regina's first words were "I have been robbed and raped." She was also present on October 22, 1973, when Regina identified defendant at Huron and Christiana.

*Gene Boyd*

He is Regina Boyd's husband. When he arrived at Mrs. Russell's apartment on February 2, 1971, he observed his wife in a hysterical condition. He accompanied her and the police to the various sites and later to the hospital. In April, 1971, he responded to his wife's telephone call from the grocery store and toured the neighborhood looking for her assailant.

*Charles Herring*

He is a Chicago police officer with 26 years experience. He conducted the investigation on February 2, 1971. He recovered a stocking or glove at 622 North Homan and a moist, dirty scarf in the garage at 636 North Homan.

*Albert Pohl*

He is a Chicago police officer with five years experience. At approximately 5 p.m. on October 22, 1973, he met Regina Boyd at Huron and Christiana and she identified defendant as the man who had raped her on February 2, 1971.

*Joseph Panzica*

He is a Chicago police department investigator with 20 years experience. Regina Boyd identified one photograph as a "look alike" to her assailant. He talked with her several months after the occurrence and she stated that she had seen the assailant at a grocery store.

Thereafter, both sides stipulated that if a Doctor Motaghedi was called he would testify that his February 2, 1971, examination of Regina Boyd resulted in the positive existence of sperm in her vagina.

*For defendant:*

*Defendant Frederick McGee on his own behalf*

On February 2, 1971, he resided at 651 North Christiana, less than one half block from the garage at 636 North Homan. He was not married at that time. He wore green khakis, paratrooper boots, a yellow shirt and a light summer jacket on that date because his apartment had been burglarized the month before and his remaining wardrobe had been stolen. He denied that his curly natural was similar to a nappy natural. He had never seen Regina Boyd prior to the time he was arrested. He denied committing a rape or robbery on February 2, 1971.

*Paula McGee*

She married defendant on June 27, 1972. They had been exclusively dating each other since 1968. After defendant's apartment was burglarized, defendant wore a yellow shirt and green pants.

*Laura McGee*

She *is* defendant's mother. Defendant's apartment was burglarized in January, 1971.

OPINION

■■ Defendant contends that he was identified in an unconstitutionally suggestive, one man show-up. Although we have examined the record on appeal, we cannot find any evidence that a one man show-up was ever held. Neither the testimony of the witnesses, counsel's objections, nor the post-trial motions suggest that this issue was ever before the trial court or preserved for review upon appeal. A court of review cannot consider statements, arguments or contentions *dehors* the record. (*People v. Rogers*, 26 Ill. 2d 599, 188 N.E.2d 22; *People v. Love*, 6 Ill. App. 3d 577, 286 N.E.2d 355.) Defendant has not argued that there was any impropriety in Regina Boyd's on-the-street identification. Since the factual basis for defendant's initial contention does not appear of record, we will not consider it on appeal.

Defendant also contends that his guilt was not established beyond a reasonable doubt. It is well settled that a criminal conviction will not be reversed upon appeal unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. (*People v. Stringer*, 52 Ill. 2d 564, 289 N.E.2d 631.) Further, this court will generally defer to the jury's determination of the credibility of the witnesses and the weight of the evidence. *People v. Vaughn*, 25 Ill. App. 3d 1016, 324 N.E.2d 17.

■■■ We believe that there was ample evidence in the case at bar to sustain defendant's convictions for armed robbery and rape. The testimony of the complaining witness evidenced the necessary elements of both crimes and was corroborated by items found at the scene and the testimony of the investigating police officers and other post-occurrence

witnesses. The mere passage of time between the offenses and Regina Boyd's on-the-street identification of defendant is a question for the jury bearing upon her credibility and the weight of the evidence. (*People v. Rodgers*, 53 Ill. 2d 207, 290 N.E.2d 251.) The test of whether a defendant has been positively identified turns upon whether the identifying witness had sufficient time to observe the offender at a reasonable distance and under adequate lighting. (*People v. McCall*, 29 Ill. 2d 292, 194 N.E.2d 222; *In re Williams*, 24 Ill. App. 3d 593, 321 N.E.2d 281.) In this case, Regina Boyd was approached by defendant on a well lighted street and was led through three buildings during which she conversed and observed defendant for approximately 20 minutes. Under these circumstances, her positive, in-court identification of defendant was not so improbable, unreasonable or unsatisfactory as to raise a reasonable doubt of defendant's guilt.

■■ The conflict between Regina Boyd's testimony as to her assailant's marital status and defendant's actual marital status at the time of the occurrence was resolved adversely to defendant by the trier of fact. Moreover, even if the jury had not also resolved the conflict over the texture of defendant's hair and the clothes he wore that evening adversely to him, we note that precise accuracy in describing these matters is unnecessary when an identification is otherwise positive. (*People v. Jackson*, 23 Ill. App. 3d 945, 320 N.E.2d 591.) In light of the testimony and corroborating evidence which was considered by the jury, we cannot say that the jury erred in finding defendant guilty beyond a reasonable doubt of the crimes charged.

For the reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

SULLIVAN and BARRETT, JJ., concur.