58

*In re* TERRAL TROUTMAN, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRAL TROUTMAN, Respondent-Appellant.)

First District (5th Division)    No. 76-1517

Opinion filed January 27, 1978.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos and Andrea D. Lyon, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Timothy Quinn, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Respondent, pursuant to a petition for adjudication of wardship filed on May 7, 1975, charging him with armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2) was found to be a delinquent minor and was committed to the Department of Corrections. On appeal he contends that: (1) he was not proved guilty beyond a reasonable doubt, and (2) the trial court lacked jurisdiction to commit him to the Department of Corrections because he was not adjudged to be a ward of the court.

The following pertinent evidence was adduced at trial.

*For the State*
*Patricia Ballenger*

At approximately 9 p.m. on April 22, 1975, as she walked up the stairs of the elevated train station at Central and Lake Streets, three youths approached her from behind. She turned around and faced them for approximately one minute. While one of them held a gun to her head, respondent grabbed her purse and, when she held on to it, struck her with his fist, knocking her down. After he took her purse, which contained approximately $15 in cash, two bank books, keys, a checkbook and a number of credit cards, three of the youths ran out of the station. She descended to the street, where a man hailed a police car for her. The police took her to the Austin Police Station. After she filled out police reports the police proceeded to drive her home. They stopped on the way to make a call and then they returned with her to the police station. At the station she was shown two individuals, one of whom she identified as respondent. A policeman then returned her credit cards to her and she was driven to her home. She estimated that one or two hours elapsed between her first contact with the police and her identification of respondent.

On cross-examination she admitted that it was dark on the night of the robbery, but explained that there was a light on inside the train station. She described her assailants as ordinary looking boys who wore dark jackets, and she denied being frightened as they approached her. She admitted that prior to her identification of respondent, the police told her that they had arrested the two boys who had committed the robbery and had recovered her credit cards.

*Walter Svihula, Chicago Police Officer*

At approximately 9 p.m. on April 22, 1975, he and his partner, Rich Zeluga, received a radio assignment to investigate a disturbance at 142 N.

Central Avenue in Chicago. Arriving at that address he observed 11 or 12 individuals sitting on the floor in the hallway. He told them to stand up and he and his partner searched them. As a result of their search they recovered several credit cards from one of the individuals. They also recovered a .32-caliber revolver from an apartment mailbox that was on the wall. Respondent, who was standing directly in front of the mailbox, denied any knowledge of the weapon. The officers arrested respondent and the individual who had been in possession of the credit cards and took them to the police station. Svihula inventoried the credit cards which bore Patricia Ballenger's name, and following her identification of respondent, returned them to her. The identification of respondent took place approximately two hours after he had first brought the two individuals to the police station.

On cross-examination he admitted that he did not recover the credit cards from respondent, nor did he ever see respondent with a weapon in his possession.

OPINION

Respondent first contends that the pretrial identification procedure was so suggestive that it tainted the complaining witness' in-court identification and left it insufficiently credible to convict him beyond a reasonable doubt. He particularly emphasizes that before the police returned the complaining witness to the police station where the identification procedure was conducted, they told her that they had arrested the two boys who had committed the robbery and had recovered her credit cards. Respondent further asserts as suggestive that he was identified shortly after the robbery at a "show-up" at which he and another suspect were the only ones presented for viewing, and that the complaining witness was "rewarded" for her identification of him by the return of her credit cards.

■■ Respondent's argument finds some support in the fact that the type of identification procedure and police conduct described above has been condemned as improper. (See *People v. Sanders* (1972), 5 Ill. App. 3d 89, 282 N.E.2d 742.) Even assuming, however, that respondent is correct in asserting that the pretrial identification procedure was unnecessarily and improperly suggestive, his contention cannot succeed. It is clear that an in-court identification based on an independent origin is valid and proper, even though a previous identification may have been impermissibly suggestive. (*People v. Connolly* (1973), 55 Ill. 2d 421, 303 N.E.2d 409; *People v. Tyler* (1975), 28 Ill. App. 3d 538, 328 N.E.2d 585.) The complaining witness' testimony that she stood within an arm's length of respondent during the robbery and, under sufficient light, had a clear view of respondent's face for approximately one minute clearly indicates

that her in-court identification of respondent had an origin independent of any suggestive pretrial identification procedure. Contrary to respondent's assertion, we specifically note, in light of these circumstances described above, that although the complaining witness only viewed respondent for approximately one minute, this was more than sufficient length of time for her to observe and to acquire an adequate basis for identification. See *People v. Bates* (1973), 9 Ill. App. 3d 882, 293 N.E.2d 358.

■■ Respondent argues, however, that the complaining witness' in-court identification was not sufficiently credible because she described him only as an "ordinary boy" who wore a dark jacket, and she could not remember anything specific about his clothing or facial features. We reject this argument. Precise accuracy in describing the facial characteristics and wearing apparel of an assailant is unnecessary where an identification is positive. (*People v. Jackson* (1974), 23 Ill. App. 3d 945, 320 N.E.2d 591.) The test of a positive in-court identification is whether the witness was close enough to the identified person for a sufficient length of time under conditions adequate for observation, and thus had the opportunity to see, observe and later to be able to make the identification. (*People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133; *In re Williams* (1974), 24 Ill. App. 3d 593, 321 N.E.2d 281.) As we have indicated above, the complaining witness had an ample opportunity to observe respondent, and thus make a positive and convincing identification. Since it is a well-established principle that a positive identification by a single witness who had ample opportunity for observation is sufficient to support a conviction (*People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866), we must disagree with respondent's contention that he was not proved guilty beyond a reasonable doubt.

■■ Respondent's second contention is that the trial court lacked jurisdiction to commit him to the Department of Corrections since it did not first adjudge him to be a ward of the court, as required by section 4—8(2) of the Illinois Juvenile Court Act. (Ill. Rev. Stat. 1975, ch. 37, par. 704—8(2).) Respondent relies upon *In re Barr* (1976), 37 Ill. App. 3d 10, 344 N.E.2d 517, and *In re Jennings* (1975), 32 Ill. App. 3d 857, 336 N.E.2d 786, which held that an explicit adjudication of wardship was required before a court could enter a dispositional order regarding a minor. Moreover, the State has agreed that the trial court's failure to make an explicit adjudication of wardship was error. Recently, however, in *In re Jennings* (1977), 68 Ill. 2d 125, 368 N.E.2d 864, our supreme court held that section 4—8(2) is concerned with the finding and adjudication of a particular status, and does not require that the order and proceedings be so ritualized that only the words "ward of the court" may be used. The supreme court therefore held that even though the phrase "ward of the court" was not used, the findings and adjudication in the trial court's

commitment order sufficiently complied with the jurisdictional requirements of the statute. 68 Ill. 2d 125, 132, 368 N.E.2d 864, 868.

■■ In the instant case, in the dispositional order committing respondent to the Department of Corrections, the trial court found in part as follows:

> "The court considered the evidence and finds: it had jurisdiction of the subject matter and the parties; the minor has been adjudged a delinquent; all statutory prerequisites have been complied with; placement under section 5—7 of the Juvenile Court Act will not serve the best interest of the minor and the public; the parent, guardian, or legal custodian is unfit, unable, or unwilling to care for, protect, train or discipline the minor."

In light of the above language we find under *Jennings* that the trial court effectively adjudicated the status of respondent as a ward of the court, and therefore complied with the jurisdictional requirements of the statute. Accord, *People v. Wright* (1977), 55 Ill. App. 3d 352, 371 N.E.2d 28.

Based on the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.