THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANTHONY HUGHES, Defendant-Appellant.

Second District   No. 77-204

Opinion filed May 8, 1978.

Mary Robinson and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Defendant, Anthony Hughes, was charged by information along with his brother, Kelvin Hughes (who is not a party to this appeal), with one count of robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—1). The defendant was convicted after a bench trial in Lake County and sentenced to one to three years. The sole issue on appeal is whether the evidence presented established defendant's guilt beyond a reasonable doubt. After a review of the record and briefs, we find the defendant was not proved guilty of robbery beyond a reasonable doubt, and we reverse the judgment of the circuit court of Lake County.

The complainant, Virginia Bannon, testified that on February 11, 1976, at approximately 8 p.m., she was in the Mediterranean Grocery Store on Genesee Street in Waukegan, Illinois. In the store she looked out the window and noticed two black men moving in a northerly direction past the store. Approximately five to 10 minutes later, after conversing with a friend and purchasing a bottle of pop, she left this establishment. She walked north on Genesee Street for about two blocks and suddenly heard footsteps behind her. The complainant did not have time to turn around, look or run when two men came up behind her, rammed her head against a tree trunk and stole her purse. The complainant testified she fell to the ground and was knocked out "for just a few minutes," during which time she "saw a streak of white light." After a brief interval she got to her feet, was able to walk, and stated she "felt like I was staggering back home." It was at this time that she observed the two individuals she had seen outside the store running about one block south on Genesee Street with their backs to her. The complainant did not have a chance to look at their faces because the two men did not turn around. She was certain at trial that the clothing on these two men who attacked her was exactly the same as that on the two individuals she had observed outside the grocery store. She described the outer apparel of the two men who robbed her and the two she saw outside the store as follows: "The one had on a beige—I guess you call it a Super Fly hat, a beige long-sleeved jacket, a dark brown shirt and beige slacks. The other one had on a blue jean jacket, dark blue shirt, blue jeans and a navy wool hat." The complainant further identified the two defendants at trial as the persons who had robbed her.

The defendant presented an alibi defense at trial. The defendant testified he was with Ollie Sanders and his brother, Kelvin, on February 11, 1976, from 12 noon to late that evening. During this time the defendant drank some beer, went to the funeral of Pam Johnson's baby in North Chicago, visited at Pam Johnson's home, and went to Dom's Tavern in Waukegan, Illinois.

Pam Johnson and Ollie Sanders corroborated the defendant's alibi to some degree. However, their testimony as to the actual times of these events was at variance with that of the defendant and his brother, Kelvin.

Officer Wayne Motley of the Waukegan Police Department testified that the distance between Julian Street (where the claimant was robbed) and Cory Street (where she saw the two individuals running on Genesee Street) was approximately 500 yards.

Officer John Angelos of the Waukegan Police Department testified that Kelvin Hughes told him that on February 13, 1976, he was in the company of Mike Burns, Ollie Sanders, and Tony Hughes at Dom's Tavern at 6 p.m. They then went to Ollie's house later that evening because Kelvin was sick.

This concluded the evidence.

Essentially, the defense contends that the complainant's uncorroborated identification of the defendant, when closely scrutinized, is improbable, unconvincing and insufficient to establish his guilt. The State, in rebuttal, argues that the complainant's identification of the defendant was positive and accurate.

■■ ■ The principles governing a reviewing court's scrutiny of a conviction which results from the testimony of a sole witness are well settled. As our supreme court reiterated in *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320:

> "A reviewing court may not substitute its judgment for that of the trier of fact 'on questions involving the weight of the evidence or the credibility of the witnesses [citations], and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt.' [Citation.] Finally, 'where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made.' [Citation]."

Generally the courts have sustained convictions based on in-court identifications where the witness was near enough to the subject for an adequate period of time under circumstances which allowed the witness an opportunity to view and observe the individual so that a subsequent positive identification could be effectuated. *People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133; *In re Troutman* (1978), 57 Ill. App. 3d 58, 372 N.E.2d 1062.

■■ Assuming that the two individuals the complainant saw outside the store 10 minutes before she was attacked were the defendants at the trial, we are not convinced beyond a reasonable doubt that these same individuals robbed her two blocks away approximately 10 minutes later. The complainant never had an opportunity to view her attackers' faces at the time of the robbery. She observed only their backs and their clothing in an admittedly staggered condition from a distance of about 500 yards after she had been robbed. We believe the combination of these evidentiary factors renders her positive identification of the defendant as one of the perpetrators of dubious and uncertain value. A conviction which is based on such doubtful and groundless identification, absent other corroborating evidence, is not sustainable upon review. *People v. White* (1978), 56 Ill. App. 3d 757, 372 N.E.2d 691.

We have examined the State's contentions that the complainant had a reasonable opportunity to make a positive identification in a lighted area and find such an argument to be unsupported by the record. We also do

not believe the perpetrators' mode of dress was so distinctive or uncommon as to justify a positive identification under these circumstances. As was stated in *People v. Versher* (1977), 52 Ill. App. 3d 148, 150, 367 N.E.2d 311, 312:

> " 'Courts will take judicial notice of the variety, conventionality and utility in modes of dress. * * * [W]e judicially notice * * * white t-shirt, khaki trousers and white gum shoes are a frequently used mode of masculine dress. It is common knowledge that a frequently used mode of dress can be seen on more than one person in the same general area.' (6 Ill. App. 3d 932, 936, n. 2)."

Similarly, the types of clothing that the individuals were described as wearing here—a "Super Fly" hat, a beige long-sleeved jacket, a dark brown shirt, and beige slacks, as well as a blue jean jacket, dark blue shirt, blue jeans and a navy wool hat—are frequently used modes of masculine dress and could very readily be seen on more than one or two individuals in the same general area. We further find that the State's emphasis on the trial court's determination that there were numerous inconsistencies in the testimony of the defendant's alibi witnesses is misplaced, for as this court recently stated in *People v. White* (1978), 56 Ill. App. 3d 757, 758-59, 372 N.E.2d 691, 692:

> "Where, apart from the consideration of the strength or weakness of the defendant's case, the insufficiency of the People's evidence creates a 'serious' or 'reasonable' doubt of defendant's guilt, the conviction will be reversed. [Citation.]"

Thus, the inconsistencies in the defendant's case are irrelevant in light of the State's failure to prove beyond a reasonable doubt, by positive identification testimony or otherwise, that the defendant was the person who robbed the complainant on the night in question. Accordingly, we reverse the defendant's conviction which was based solely on the above unsubstantiated identification.

The judgment of the circuit court of Lake County is reversed.

Judgment reversed.

NASH and WOODWARD, JJ., concur.