THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD ROLON, Defendant-Appellant.

First District (1st Division)　No. 61873

Opinion filed April 30, 1979.

James J. Doherty, Public Defender, of Chicago (Joseph I. Cronin, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Paula M. Daleo, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Richard Rolon, was convicted by a jury of aggravated battery. He appeals, contending that he was denied a fair trial because the trial judge did not allow him to rely on certain photographs in cross-examining two of the State's witnesses and that he was proved guilty beyond a reasonable. We disagree and affirm.

The complainant, Michael Senkow, testified that during the evening of August 24, 1972, he and four or five friends went to the 1800 block of Thomas Street, in Chicago, where they met a person Senkow knew named George Calderon. Calderon shouted something, which caused Senkow to approach Calderon and ask him to repeat what he had just said. Calderon did repeat his statement, whereupon Senkow hit Calderon with his fist, knocking him down. Senkow and Calderon then began to wrestle with each other, until Calderon's mother came along and broke up the fight.

About 30 minutes later, at around 11 p.m., Senkow and his friends were close to the corner of Honore and Thomas Streets when they saw a group of approximately 10 Puerto Ricans gathered nearby. Senkow and his friends turned and began walking west along the 1800 block of Thomas. When they were about halfway down the block, a shot was fired from the group of Puerto Ricans, who had begun running down Thomas Street towards them. Because the man running in front had a gun, Senkow took cover behind a truck parked along the south side of Thomas, where a large street light extended overhead.

The man with the gun approached the truck on the street side and fired a second shot at Senkow, who was hiding near the rear. This second shot was fired while the gunman and Senkow were nearly opposite each other, about 15 feet apart. Senkow was not hit by this second shot, and he crept from the rear of the truck to the front. He then raised himself up and a third shot was fired by the gunman, who again was standing opposite Senkow, about 15 feet away. This third shot hit Senkow in the right chest and he fell between the curb and the truck. While Senkow was lying there, face down "playing dead," a fourth shot was fired, which hit him in the left forearm. After this, Senkow heard the man with the gun run down the street shouting obscenities and firing more shots.

Senkow also testified that as he was lying on the ground wounded,

another person came up to him, said, "this is one of them," and began hitting him in the back with a board. Senkow further testified that he recognized the voice of the person who hit him with the board as that of George Calderon.

After the shooting, Senkow was taken to the hospital, where he was treated for gunshot wounds in his chest and left forearm. He remained in the hospital for approximately a week and a half.

Sylvia Lopez testified for the State that on the night of the shooting she lived in a five-room first floor apartment at 1838 West Thomas Street. At about 11 p.m., she was either in the kitchen or watching T.V. when she heard a shot. She immediately went to one of her apartment's two front windows, which overlooked Thomas Street. Her husband, Juan Lopez, went to the other window. From her window, she saw a man fire three more shots while running back and forth on Thomas Street. She pointed in court to the defendant, Richard Rolon, as the man she had seen fire the shots. She also stated that during the shooting she saw a gun in defendant's hand, and that it was similar to the gun which the State introduced as an exhibit. She further testified that after seeing Senkow fall to the ground wounded, she went outside on her front porch, where she witnessed George Calderon hitting Senkow with "a long stick." She lost sight of defendant at this time. She later went to the police station, where she viewed a lineup. She testified that she identified George Calderon and defendant, Richard Rolon, at this lineup.

Juan Lopez was also a witness for the State, and his testimony was similar to that of his wife, Sylvia. He stated that on the night in question he was watching television when he heard a shot. He went to one of his apartment's two front windows and saw a man running back and forth fire four more shots. Juan Lopez pointed in court to defendant, Richard Rolon, as the man he saw fire the shots. After witnessing defendant fire the shots, he saw defendant run to the corner, reload his gun, put the gun in his pocket and run away. Juan Lopez said he did not see Michael Senkow until after Senkow had been shot and had fallen down. Juan Lopez also testified that he identified defendant as the gunman in a police lineup he viewed after the shooting.

John Dugan, the police officer who arrested defendant, testified that after the shooting he went to defendant's apartment, where he informed defendant he was under arrest. At this time he also arrested defendant's brother, Jose Rolon, in connection with the shooting. While in the apartment, Dugan searched for the weapon used in the crime and found a revolver, which he identified in court as a State exhibit. He also testified that, after he disovered the gun, he asked defendant if the gun was his, and if he was involved in the shooting. Defendant, Dugan said, answered that the gun was his and that he did do the shooting. In addition, Dugan

testified that after he took defendant to the police station, defendant seemed very concerned about his brother and said that he himself, not his brother, did the shooting and that his brother should be released. Dugan further stated that he had informed Officer Acosta of defendant's admissions, but Dugan also admitted that he never reduced defendant's admissions to writing.

Officer Jesse Acosta, of the Chicago Police Department, was called as a witness by defendant. Acosta testified that he interviewed Sylvia and Juan Lopez after the shooting for about 10 minutes each, and that for three or four minutes of each interview he took notes on what they told him. Acosta said that in his interview with Sylvia Lopez, she informed him she had not seen a gun during the shooting. Acosta further stated that prior to testifying he had refreshed his recollection of his interview with her by reading the police report he had prepared. He wrote this police report primarily from the notes he had taken during his interview of the Lopezes. After he had prepared the report, he destroyed his notes. Acosta admitted the notes were not a formal statement by the Lopezes of what they had seen. The notes were simply a summary, not a verbatim account, of what they had told him. Acosta further stated that they did not have an opportunity to read over the notes, or to sign them, or to read or to amend and correct the police report, or to sign it.

Acosta also stated that he was at the lineup where Sylvia Lopez said she identified both defendant, Richard Rolon, and George Calderon. However, he testified that she had identified only one person in the lineup, George Calderon, and that he had noted this in his police report. Acosta further stated that a lineup supplemental report is a detailed account of what occurs at a particular lineup, and admitted that no such report was made concerning the lineup where Sylvia Lopez testified she identified defendant. Acosta testified that no one told him that defendant had admitted owning a gun or doing the shooting.

At trial, defendant wished to cross-examine Sylvia and Juan Lopez from photographs taken of the scene of the shooting. When defendant attempted to introduce these photographs into evidence, a hearing was held outside the presence of the jury concerning their admissibility. The trial judge held that the photographs should be excluded because they did not show the view which the Lopezes had of the shooting from their apartment windows, and therefore would give the jury an inaccurate impression of the Lopezes' ability to see what had happened. Defendant argues on appeal that in excluding the photographs the trial judge abused his discretion and denied defendant his right to confront witnesses. We disagree and hold that the trial court's decision to exclude the photographs was proper.

■■ ■ The admission of photographs and the scope of cross-examination

of witnesses in a criminal case are largely within the discretion of the trial judge, and his decision will not be overturned unless there has been an abuse of discretion which has prejudiced a defendant. (*People v. Dillard* (1979), 68 Ill. App. 3d 897, 386 N.E.2d 416; *People v. Pickett* (1975), 34 Ill. App. 3d 590, 598-99, 340 N.E.2d 259, 265-66.) Furthermore, "a criminal defendant has a constitutional right to confront and examine witnesses * * *. [Citation.] However the right of confrontation is not absolute and may in appropriate cases bow to accommodate other legitimate interests in the criminal trial process." (*Greenfield v. Robinson* (W.D. Va. 1976), 413 F. Supp. 1113, 1119.) It has therefore been held that even though the confrontation clause creates a "presumption in favor of free cross-examination," it remains "within the sound discretion of the trial court" to place restrictions on its scope. (*United States v. Onori* (5th Cir. 1976), 535 F.2d 938, 945.) Consequently, when a defendant in a criminal case seeks to introduce evidence on cross-examination which would only confuse or mislead the jury, the trial judge in his discretion may exclude the evidence without violating the defendant's right to confront witnesses. *Greenfield v. Robinson* (W.D. Va. 1976), 413 F. Supp. 1113, 1120.

As the confrontation clause does not alter the fact that the scope of cross-examination in a criminal case is within the trial judge's discretion, the remaining question concerning the photographs is simply whether the trial judge abused his discretion by excluding them. We agree with the trial judge that defendant's photographs would have confused and misled the jury concerning the Lopezes' ability to see the crime. First of all, while the Lopezes' apartment appears in the photographs, none of the photographs was taken from the vantage point which they had of the shooting. Furthermore, Sylvia Lopez testified *in camera* that the trees and foliage near the windows of their apartment were fuller in the photographs than they were on August 24, 1972, the night of the shooting, because sometime prior to the shooting the city had trimmed the trees. At the time of the shooting, she said, the trees were "leaner, higher up" than they were in the photographs; also, "there wasn't so much foliage near the ground" when the shooting occurred.

We have examined the photographs and find that due to the angle at which two of the photographs were taken, the windows of the Lopezes' apartment in these two photographs appear to be obscured by trees and foliage which, from their testimony, were not within the line of sight they had of the shooting. Moreover, the fact that the photographs were taken during the daytime resulted in heavy shading appearing around the Lopezes' windows in two of the pictures. In one of these photographs the shading creates a misleading impression as to the width of a tree in front of the Lopezes' apartment.

Photographs should not be admitted into evidence unless they are

shown to portray certain facts relevant to an issue of the case and are verified as a correct representation of those facts. (*People v. Schwing* (1971), 133 Ill. App. 2d 100, 103, 272 N.E.2d 779, 781.) As a general rule, photographs should be excluded when they would confuse or mislead the jury. (*Vujovich v. Chicago Transit Authority* (1955), 6 Ill. App. 2d 115, 118, 126 N.E.2d 731, 733.) Moreover, when a photograph allegedly portrays the scene of a transaction, but conditions in the photograph differ from conditions which existed at the time of the transaction, the photograph normally is inadmissible unless the changes in conditions can be explained in such a way that the jury will not be confused or misled by the photograph, but instead will understand the photograph as though it were a correct representation. *Burnett v. Caho* (1972), 7 Ill. App. 3d 266, 271, 285 N.E.2d 619, 623.

■ Defendant obviously felt that his photographs were relevant concerning the Lopezes' ability to see the person who shot Michael Senkow. However, as the trial judge stated, the photographs probably would only have confused and misled the jury concerning the Lopezes' ability to witness the crime. We cannot say that the trial judge abused his discretion when he excluded these photographs.

Defendant's second contention is that he was not proved guilty beyond a reasonable doubt. First, defendant points out that the shooting occurred at night, and that the complainant Senkow was unable to identify his assailant. Therefore, defendant argues, it is unlikely that the Lopezes could have seen the gunman clearly enough to identify him. Defendant also maintains that Sylvia Lopez' testimony that she saw a gun during the shooting and that she identified defendant in a lineup afterwards was impeached by Officer Acosta, who testified that Sylvia Lopez told him she had not seen a gun during the shooting and that she did not identify defendant at the lineup.

Defendant also urges that Juan Lopez' testimony that, after hearing the first shot, he saw defendant fire the next four shots lacks credibility. To support this argument, defendant relies on the fact that while Michael Senkow testified he was felled by the third shot fired, Juan Lopez said he did not see Senkow until after Senkow had been shot and had fallen down. Defendant argues that if Juan Lopez, after hearing the first shot, actually saw defendant fire the next four shots, then he necessarily would also have seen Senkow prior to the time Senkow fell wounded, because Senkow, according to his own testimony, was only 15 feet away from his assailant when the second and third shots were fired at him.

■ In order to reverse a criminal conviction, we must conclude that the evidence is so improbable that it raises a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) Defendant's

arguments do not persuade us that the evidence in this case is so improbable that there is a reasonable doubt of defendant's guilt. The fact that the complainant Senkow could not identify defendant does not weaken the Lopezes' identification of defendant. Senkow testified that during the shooting he was hiding behind a truck and trying to avoid being shot. He further stated that after he fell wounded, he lay face down "playing dead." It is understandable that Senkow could not see or identify his assailant. Also, the fact that the shooting occurred at night does not render the Lopezes' identification unbelievable, in view of Senkow's testimony that a large street light extended over that part of Thomas Street where the shooting occurred.

■ There is no question but that defendant is correct that the testimony of Sylvia Lopez and of Officer Acosta conflict with respect to whether she saw a gun during the shooting and whether she identified defendant in a lineup after the shooting. However, this court will ordinarily defer to the jury's determination concerning conflicts in testimony and the credibility of witnesses. (*People v. McGee* (1976), 38 Ill. App. 3d 889, 892, 350 N.E.2d 13, 16.) We have examined the record and cannot say that the jury could not reasonably have accepted Sylvia Lopez' testimony. Furthermore, even if she did not identify defendant in a lineup after the shooting, she did make an in-court identification of defendant and "[f]ailure to identify a defendant in a lineup does not negate the credibility of a later identification of that same defendant." *People v. Evans* (1976), 42 Ill. App. 3d 902, 910, 356 N.E.2d 874, 880.

■ Finally, the testimony of Juan Lopez that, after hearing the first shot, he saw defendant fire four shots, is not necessarily contradicted by his other testimony that he did not see Senkow until after Senkow was wounded and had fallen down. The jury heard Senkow's testimony that he evaded the second shot that was fired by hiding on the south side of Thomas Street behind a truck, that he crept behind the truck from the rear to the front and that when he then raised up, he was immediately hit by the third shot and fell to the ground. The jury also heard the testimony of Juan Lopez that he was looking from the north towards the south side of Thomas Street when he witnessed the shooting, which put the truck between Senkow and himself. The credibility of Juan Lopez' testimony was for the jury. *People v. McGee* (1976), 38 Ill. App. 3d 889, 892, 350 N.E.2d 13, 16.

■ "It is well settled that a positive identification by even one witness, who had a good opportunity to observe an accused in terms of length of time, proximity and lighting conditions, is sufficient to sustain a verdict of guilty." (*People v. Stepney* (1977), 46 Ill. App. 3d 328, 330, 360 N.E.2d 1206, 1208.) It is equally well settled that the question of identification is for the jury. (*People v. Hayes* (1973), 14 Ill. App. 3d 248, 252, 302 N.E.2d

411, 414.) Here, two witnesses identified defendant as the man they saw running back and forth firing a gun. This testimony was corroborated by Michael Senkow's description of the manner in which his assailant stalked and shot at him alongside the truck. Furthermore, Senkow's testimony indicates the scene was illuminated by a street light. In addition, Officer Dugan testified that defendant told him that he had done the shooting. The Lopezes' and Officer Dugan's credibility was properly left to the jury, which found them believable. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) On the evidence in the record, we cannot say that the jury's verdict was in error. The evidence was sufficient to prove defendant guilty beyond a reasonable doubt. Defendant's conviction is affirmed.

Affirmed.

McGLOON and CAMPBELL, JJ., concur.