**Jerry Wayne FITCH,
Petitioner-Appellant,**

v.

**W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.**

No. 77–1915.

United States Court of Appeals,
Fifth Circuit.

Jan. 12, 1979.

Rehearing Denied Feb. 12, 1979.

Jerry Wayne Fitch, pro se.

Patrick Lanius and Michael Tobin, Staff Counsel for Inmates, Texas Dept. of Corrections, Huntsville, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Austin, Tex., W. Barton Boling, Asst. Atty. Gen., El Paso, Tex., David M. Kendall, Joe B. Dibrell, Barbara M. Barron, Asst. U. S. Attys., Austin, Tex., for respondent-appellee.

Before GEE and VANCE, Circuit Judges, and HUNTER, District Judge.*

VANCE, Circuit Judge:

Jerry Wayne Fitch, a man of questionable judgment at best, robbed the Sheriff of Pecos County, Texas on January 11, 1973, and at gunpoint escaped from the Pecos County Jail where he had been lawfully confined. In due course he was recaptured, was indicted for robbery, pleaded guilty and on April 12, 1973, he was sentenced to twenty-five years in the State Department of Corrections.[1] No direct appeal was taken.

---

\* Senior District Judge of the Western District of Louisiana, sitting by designation.

1. His robbery sentence was ordered to run consecutive with an additional five-year sentence imposed after his conviction for escape. Fitch's petition does not complain of his escape conviction.

Fitch's petition for state habeas corpus was denied without a hearing, and the Texas Court of Criminal Appeals affirmed without written order. On December 3, 1975, he filed his federal petition for a writ of habeas corpus, which was denied by the district court on August 23, 1976, without an evidentiary hearing.

Fitch's notice of appeal was filed with the clerk of the district court on September 23, 1976, thirty-one days after entry of the judgment from which appeal was taken. An affidavit filed by Fitch in the district court reflects that he received the district court's order on August 25, 1976, and a receipt for certified mail indicates that he mailed his notice of appeal on September 21, 1976. Citing *Lashley v. Ford Motor Co.*, 518 F.2d 749 (5th Cir. 1975), another panel of this court remanded the case to the district court for a determination whether excusable neglect entitled Fitch to an extension of time for filing a notice of appeal. *Fitch v. Estelle*, No. 77–1915 (5th Cir. Oct. 7, 1977). On March 27, 1978, the district judge found that petitioner's one-day delay in filing a notice of appeal was the product of excusable neglect and ordered that his appeal be deemed timely filed.

Petitioner contends that the district court erred in failing to conduct an evidentiary hearing on his claims (1) that he was incompetent to stand trial, (2) that his plea of guilty was involuntary, and (3) that he was denied the effective assistance of counsel. He states in his brief that these three issues are inextricably intertwined. We agree, at least in part, but shall address them separately in the order presented.

## I.

To deal with Fitch's claimed incompetency at the time of trial we must turn our attention to the recorded events beginning a few weeks before Fitch's conviction in state court.

Because he was an indigent Fitch had requested that an attorney be appointed to defend him against the robbery charge. The trial judge appointed Fitch's first attorney, Mr. Charles Prock, on February 22,

1973. On March 12, 1973, Mr. Prock filed a motion for continuance in connection with which the following exchange took place:

MR. CHARLES PROCK: Your Honor, this motion for continuance is based upon certain hospitalization records which, yp [sic] to this point we have not been able to obtain. It has come to my attention that the Defendant was hospitalized in the Big Spring State Hospital for some time with a mental disorder.

I think that this may have a bearing, a direct bearing upon our conduct of the trial of the Defendant.

THE COURT: In other words, Mr. Prock, at this point you are telling us and it is your feeling that the Defendant is not mentally competent to assist you in the preparation for the trial. Are you concerned about that?

MR. CHARLES PROCK: That is right, Your Honor. These records may be of some assistance to us when we do go to trial, and we urge the Court to continue this cause to the next term of Court or to a reasonable time in the future.

A discussion ensued between the court, the defense attorney and the district attorney concerning difficulties then being experienced in obtaining reports from the hospital. The district attorney seemed to be familiar with the defendant's hospitalization in connection with another case but could not supply the details. After a file was brought to the district attorney he informed the court that the record indicated that Fitch was voluntarily committed in May of 1972. He gave Fitch's attorney a letter addressed to the sheriff and dated July 5, 1972, as well as a discharge form dated July 6, 1972. The form showed that Fitch had been hospitalized for approximately forty-two days. The letter, which was signed by a social case worker, stated that his diagnosis was a personality disorder and that his prognosis was poor. The file also showed that Fitch was hospitalized a second time, which according to the district attorney was for an examination in connection with another offense. A discharge form covering the second hospitalization re-

flected that Fitch was hospitalized for sixty days beginning on August 3, 1972, until his discharge on November 2, 1972.[2] The file contained no report whatever concerning Fitch's diagnosis or prognosis on the occasion of the more recent hospitalization. The district attorney stated that the sheriff requested a report but was told verbally that the hospital personnel would not make one and that their diagnosis and prognosis was the same as that shown in the earlier report.

The court then gave the following instruction:

THE COURT: Right. Mr. District Attorney, you are instructed and requested to contact the hospital and ascertain if they feel like they could get us this report and also if they would examine him again if they could and forthwith.

The Court will continue this cause until April 24, 1973, at 10:00 o'clock on such date. Meanwhile the custody of the defendant is remanded to the Pecos County Sheriff's office. We will have the final pre-trial on April 9, 1973. Thank you, Mr. Prock, you are excused.

The record before us is silent as to what, if anything, was done as a result of this instruction and as to whether any subsequent report was ever received by the state court. Fitch alleges that his second attorney told him that nothing was done.

On March 29, 1973, Fitch's appointed counsel filed a motion seeking to discover documents in the possession of the district attorney including "[a]ll medical records or psychiatric reports made in any way in connection with the prosecution of the Defendant." There apparently was never a ruling on the motion.

The record reflects that on April 9, 1973, the judge appointed a second defense counsel to represent the defendant. On April 11, 1973, a motion to withdraw was filed by Mr. Prock, Fitch's first attorney, alleging in support of the motion that Fitch had "failed to co-operate with this attorney to such an extent that this attorney can no longer hope to effectively represent said party." On the next day, April 12, 1973, Fitch, accompanied by his new attorney, appeared in court and pleaded guilty. He and his attorney signed a five-page form captioned "Representations and Waivers of Defendant," used by the court in accepting pleas of guilty. Part of representation number 12 on the standard form that provides "and, have never been treated by a doctor for mental illness or committed to a mental institution" was crossed out. In representation 4(i) he acknowledged that he was informed that he could not be compelled to go to trial for at least ten days following the appointment of counsel. In another portion of the same form he waived this ten-day minimum period.

In reaching his conclusion that a hearing on the issue of competency was not warranted, the district judge relied on (1) the report that resulted from Fitch's first hospitalization from May 25, 1972, to July 6, 1972, and (2) Fitch's acknowledgement in open court at the time his plea was entered that he understood the offense for which he was being tried and felt able to assist his attorney.

■ We observe at the outset that the second of the stated reasons is of questionable persuasiveness. An incompetent defendant can hardly be accepted as a reliable witness to his own competency. No principle of waiver applies. As the Supreme Court held in *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815 (1966),

But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently "waive" his

---

2. The discharge form that covered the first hospitalization following Fitch's voluntary commitment was addressed to Fitch, himself. The discharge form covering the second hospitalization was addressed to Judge Luttrell, County Judge of Pecos County. From this difference Fitch's counsel would have us infer that Fitch's second commitment was involuntary, the legal requirements for which could be quite significant in connection with our present inquiry. Aside from the difference in addressees, however, we find no evidentiary basis for such an inference.

right to have the court determine his capacity to stand trial.

■ The standard long applicable in federal cases and now applied in state cases as well is whether Fitch had sufficient present ability to consult with his attorney with reasonable understanding and whether he had a rational as well as a factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Davis v. Alabama*, 545 F.2d 460, 463 (5th Cir.), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *Lee v. Alabama*, 406 F.2d 466, 471 (5th Cir. 1968), *cert. denied*, 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246 (1969). Trial of an accused while he fails to meet this standard of competency denies him due process of law. A defendant has a right not to be tried while he is incompetent, and he also has a right to procedures adequate to safeguard this substantive right. *Martin v. Estelle*, 546 F.2d 177 (5th Cir.), *cert. denied*, 431 U.S. 971, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977); *Davis v. Alabama, supra; Grissom v. Wainwright*, 494 F.2d 30 (5th Cir. 1974); *Nathaniel v. Estelle*, 493 F.2d 794 (5th Cir. 1974).

■ Fitch now claims that his right to procedural due process was violated when the state trial court failed to conduct a hearing to determine his competency at the time of trial. He did not raise the issue of competency at that time either by evidence or by motion. The only relevant proceedings that appear from the fragments of record before us took place in connection with the motion for continuance. *Pate v. Robinson, supra,* makes clear, however, that an explicitly worded motion is not the only way to trigger the required procedures.

[I]f the defendant has presented evidence to the trial court, before or during trial, that raises a "bona fide doubt," of his competence . . . the trial court's failure to make further inquiry denies that defendant his constitutional right to a fair trial.

*Davis v. Alabama, supra,* 545 F.2d at 464.

■ The events recited above tell the complete story that is before us. Defendant has not shown that the factors of significance outlined in *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) were present. Except to the extent that the commission of crimes may be deemed irrational, defendant revealed no history of irrational behavior. Although Fitch apparently would not cooperate with his first attorney, he does not show that his demeanor while before the court indicated incompetency. Finally, the prior medical opinion tends to negate rather than confirm incompetency. We conclude from what Fitch has presented in the district court and in this court that a *Pate* hearing was not triggered. *See Grissom v. Wainwright,* 494 F.2d 30 (5th Cir. 1974). We would so hold if the issue were standing alone. Because we find it necessary to remand the case for a hearing on the second issue, however, we conclude that the interests of judicial economy will best be served if we require that the hearing encompass this issue as well. In this connection the initial question before the district court will be whether reasonable grounds were presented to the trial court in 1973 to entitle Fitch to a full sanity hearing. *See Lokos v. Capps,* 569 F.2d 1362 (5th Cir. 1978). If that question is resolved affirmatively, the district court should further determine whether a meaningful hearing on that issue may now be held [3] and, if so, it must decide the ultimate issue, whether Fitch was competent at the time of his trial.[4]

## II.

The second issue is the claimed involuntariness of Fitch's plea of guilty. Fitch bases his contention on a claimed combina-

---

3. We do not forecast that if it is reached the problem will be as unsuited for contemporary resolution as it was in *Pate.* Fitch was evaluated twice at a state institution which presumably maintains records that may or may not free the question of substantial doubt. The question is for the district court to decide. We simply observe that the question is sometimes not as insoluble as the *Pate* court found it to be under the facts then presented. *See, e. g., Lee v. Alabama, supra* at 471.

4. If not, of course, a new trial must be ordered. *Pate v. Robinson, supra.*

tion of threats and promises by his jailer and his newly appointed second defense counsel. Relevant portions of the sworn allegations in his petition are set out below.[5]

No hearing has been held by either the state courts or the district court on this claim of coercion. The district judge looked to petitioner's contrary acknowledgements at the time of his plea and determined that further inquiry was not justified.

█ The state court used a very detailed written and oral inquiry before accepting

Fitch's plea. Why shouldn't the state of Texas be entitled to rely on Fitch's own declarations made in open court with counsel at his side? We must accept as our starting point that a coerced plea is subject to collateral attack. *Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973). No system, including that utilized in Fitch's case, can be perfected to a point that makes it "uniformly invulnerable to subsequent challenge." *Id.* at 215, 93 S.Ct. at 1462. We have recognized that when the state court has failed

5.   Being returned to the Jail [on April 11, 1973], Petitioner was called from the cell block late in the p. m. hours and led to an office within the building. Petitioner was there confronted by a deputy sheriff jailer and, after extensive coercive isolated interrogation, told that, if he failed to co-operate as instructed, he would be sorry for his actions. The interrogation processes continued throughout the entire night, with emphasis placed on one alleged offense of jailbreak which was at that time pending against the Petitioner. During the early a. m. hours while being interrogated by the officer, Petitioner was instructed that he was to plead guilty to any and all charges brought against him and promised the Petitioner that immediately after the guilty pleas were entered, a recommendation would be submitted before the Court for the Petitioner to be placed under the care of an institution for the mentally ill where he would be treated fairly and taken care of, and that, if the Petitioner did as he was told, the burglary charge would be reversed by the Court and dismissed; and further, that the Petitioner would never see the inside of the State penitentiary. Petitioner was then threatened that he could either accept the *deal* or spend the rest of his life behind bars and that once he returned from Court and it was learned that he did not follow through, the Petitioner would never escape from any other jail as long as he lived and that he would never forget escaping from jail after all was finished; and further, that the Petitioner would be lucky if he in fact reached the front doors of the State penitentiary. Petitioner, being shocked by the officer's threatening remarks and statements, was placed back in the cell block and told to think about what was said.

On the next morning, April 12, 1973, the petitioner appeared before the Honorable Charles Sherill, presiding Judge of the 112th Criminal Judicial District Court of Pecos County, Texas, whereupon the Court appointed new counsel (Ralph O. Burleson) to represent the Petitioner. Petitioner and the newly appointed attorney then retired for confrontation and consultation. After having related to the attorney all that had occurred the night before, up until a few hours before appearing in Court that day, Petitioner acknowledged that he was 'Not Guilty' of the offenses brought against him. He desperately pleaded with his counsel to first get him transfered [sic] to another jail where he would be safe from the threat of the officers and thereafter to assist him in the preparation of his defense. The attorney related to Petitioner that nothing could be done for him and that it was a hopeless matter. Counsel then instructed the Petitioner to plead guilty. The Petitioner attempted to explain to the attorney that he could produce available, material, and relevant evidence and witnesses that could possibly establish a defense and then inquired as to the psychiatric examination and records. Counsel instructed and informed the Petitioner that nothing had been done to secure the records and further instructed the [sic] he could either plead guilty to the alleged offense or suffer the consequences of life behind bars. Counsel then stated that, if the Petitioner pled guilty to all of the charges, he would immediately be placed in a hospital where he would receive psychiatric attention; that the escape would be run concurrent with the robbery and burglary charges; that he had spoken with the Judge and was assured that after the pleas of guilty were secured, the burglary charge would be reversed and dismissed and that the Court would order him committed to the State Hospital at Big Springs; and further, that the Petitioner would never reach the penitentiary. The court-appointed attorney then informed Petitioner that if he persisted in pleading 'Not Guilty', he would surely spend the rest of his life in the penitentiary and that nothing could or would be done for him. Petitioner then submitted to the attorney's instructions and thereafter appeared before the Court where the attorney announced ready for trial.

to do so and unless it appears from the petition that the petitioner is not entitled to relief, the district court must hold an evidentiary hearing and find the relevant facts. *Scott v. Estelle*, 567 F.2d 632 (5th Cir. 1978).

In *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 736 (1977), the Supreme Court noted that prisoners usually have everything to gain and nothing to lose by a collateral attack. Most prisoners want to be released from prison. If they fail in their attack they may at least win a trip outside the walls to a distant city where the hearing is held. Obviously the potential for abuse is enormous. But against this must be weighed the historic role of the great writ in the preservation of human freedom:

> And a prisoner in custody after pleading guilty, no less than one tried and convicted by a jury, is entitled to avail himself of the writ in challenging the constitutionality of his custody.

*Id.* at 72, 97 S.Ct. at 1628.

 In the wake of *Blackledge*, however, a formidable barrier to collateral attack of a guilty plea remains:

> Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 74, 97 S.Ct. at 1629. The allegations in this case are not conclusory. They include what was said when, where, and by whom. In the face of the peculiarities of this case, the facts involved in the commission of the offense, the not wholly unsubstantiated claim of mental impairment and the abrupt and largely unexplained change of counsel and defense strategy, the barrier was clearly overcome, and a hearing was required.

### III.

Petitioner's claim that he was denied the effective assistance of counsel is based on (1) promises that he alleges were made by his second appointed counsel to induce his guilty plea and (2) the attorney's failure to investigate whether Fitch was competent.

We need not consider whether these allegations standing alone were sufficient to require a hearing on this issue by the district court. The case must be remanded for a hearing on the voluntariness of Fitch's plea of guilty. All three issues are at least to some degree intertwined. We therefore direct that on remand an evidentiary hearing also be held on this third issue.

The order of the district court dismissing petitioner's application for habeas corpus relief is vacated and the case remanded for an evidentiary hearing in the district court in accordance with this opinion.

VACATED and REMANDED.