THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD BALDWIN, Defendant-Appellant.

First District (1st Division)   No. 1—87—0980

Opinion filed June 30, 1989.

Paul P. Biebel, Jr., Acting Public Defender, of Chicago (Marilyn Martin and Mary C. Arundel, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, and Mary E. Shields, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial, the defendant, Reginald Baldwin, was convicted of armed robbery and sentenced to six years' imprisonment. The defendant appeals from the conviction.

On appeal, defendant contends (1) his conviction must be reversed where it was based on identification testimony that was doubtful and vague and, therefore, he was not proven guilty beyond a reasonable doubt; (2) his conviction must be reversed because of errors made by the trial court in determining that defendant was fit for trial and was able to cooperate with his counsel; and (3) he did not receive effective assistance of counsel where defense counsel proceeded to trial prior to investigating defendant's mental condition and where he failed to obtain relevant psychiatric records until after trial.

At trial, Patricia Kesterson testified that on the night of August 5, 1986, at approximately 10:20 p.m., she returned home to her courtyard apartment on the north side of Chicago. She unlocked the exterior vestibule door, propped the door open with her right foot, and began pulling her keys out of the door. At that moment, the defendant

approached the victim and stuck his foot in the door. The defendant put a knife to the victim's throat with his right hand and used his left hand to push her against the mailboxes. Kesterson stated the robber had "crazy black eyes," which she described as watery, glossy, extremely shiny, and bulging out. The defendant repeatedly stated "give it to me," indicating that he wanted her purse, and Kesterson protested. The defendant finally grabbed Kesterson's purse and started to run through the courtyard. Kesterson ran after the defendant, calling out for help. Michael McClory, a neighbor of Kesterson's, heard her cries and also began chasing the defendant. Kesterson lost sight of the defendant, but hailed down a police car and the two police officers began running after McClory. The defendant was subsequently apprehended and Kesterson identified the defendant in court.

Michael McClory testified that he resides in the vicinity of Patricia Kesterson's apartment. On the night of August 5, 1986, he heard screams and saw Kesterson running. Kesterson told him that her purse had been taken and pointed at the defendant. McClory chased the defendant down an alleyway. He followed the defendant over a fence at the end of the alleyway but twisted his ankle. He yelled out to the police officers the direction in which the defendant was running. McClory identified defendant in court as the man he had chased.

Peter Roach testified that he heard shouting in the alley outside his home on August 5, 1986. He looked out over his balcony and saw a person moving from one stairwell to another stairwell. Roach saw the police officers on the street and told them that there could be a problem. The police began checking the stairwells and found the defendant hiding in the stairwell below Roach's apartment. The officers also found a knife and a baseball cap in the stairwell.

Chicago police officer James Buckner testified that he received a call about an offender being chased in the area of 2331 N. Geneva Terrace in Chicago. Buckner and his partner, Officer Jakowski, began a foot search in the rear of some of the buildings in that area. Buckner heard his partner yell "don't move" and went to his assistance. Jakowski had his revolver drawn and pointed down a stairwell. Jakowski ordered the defendant to come up from the stairwell, handcuffed him and advised him of his rights. Buckner testified that defendant was wearing a gray sports jacket and dark pants. The defendant had a moustache and brown eyes. The defendant told the police officers that he had been sleeping. The officers found a knife and a black baseball cap with a yellow front in the stairwell. It was stipulated by the parties that no fingerprint evidence was taken from

the knife or the victim's purse.

Defendant's first contention is that his conviction must be reversed because it was based upon identification testimony which was doubtful and vague and which did not prove his guilt beyond a reasonable doubt. The State maintains that the defendant was proven guilty beyond a reasonable doubt where two eyewitnesses identified the defendant in court as the offender, and the defendant was arrested within minutes after the offense a short distance from the scene of the crime, and the knife used in the armed robbery was recovered in the defendant's immediate vicinity.

■ In a bench trial, it is for the trial judge to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649; *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 378 N.E.2d 1318.) On review the trial court's judgment will not be set aside unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to the defendant's guilt. (*People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Discrepancies or conflicts in the testimony generally affect only the weight to be given the testimony, and the trier of fact is free to accept or reject a witness' testimony. *People v. Childs* (1981), 95 Ill. App. 3d 606, 420 N.E.2d 513.

In the case at bar, the victim testified that the defendant approached her while she was standing in an area adequately supplied with artificial light. She stated she was able to view the defendant's face at close range for approximately two minutes. Later, after the defendant was apprehended by the police, she positively identified defendant at the scene and also identified him at trial.

Defendant contends that Kesterson's testimony cannot sustain his conviction because of the discrepancies in the victim's description of the facial features of the defendant at the time she reported the crime as compared to the testimony of Officer Buckner. Kesterson testified that the robber did not have a moustache and that she noticed no facial hair. She also stated that defendant's hair was kinky and chin length. Officer Buckner testified that the defendant had a moustache when he was arrested and wore his hair in braided corn rows.

■ Illinois courts have recognized that discrepancies and omissions as to facial and other physical characteristics are not fatal, but simply affect the weight to be given identification testimony. (*People v. Miller* (1964), 30 Ill. 2d 110, 195 N.E.2d 694; *People v. Fairbanks* (1986), 141 Ill. App. 3d 909, 491 N.E.2d 74; *People v. Brown* (1977),

50 Ill. App. 3d 348, 365 N.E.2d 907.) It has consistently been held that a witness is not expected or required to distinguish individual and separate features of a suspect in making an identification. (*People v. Winston* (1987), 160 Ill. App. 3d 623, 513 N.E.2d 1121; *People v. Dean* (1987), 156 Ill. App. 3d 344, 509 N.E.2d 618; *People v. Brown* (1982), 110 Ill. App. 3d 1125, 443 N.E.2d 665.) The presence of discrepancies or omissions in a witness' description of the accused do not in and of themselves generate a reasonable doubt as long as a positive identification has been made. *People v. Harrison* (1978), 57 Ill. App. 3d 9, 372 N.E.2d 915.

■■ In the case at bar, the victim, Patricia Kesterson, positively identified the defendant as the man who robbed her. She stated she was looking right at defendant's face at the time of the offense for a period of two minutes and that the area was adequately supplied with artificial light. The trial judge stated that he interpreted Kesterson's testimony that defendant had no moustache to mean that she did not notice a moustache. The trial judge also based his finding of proper identification testimony on the fact that the defendant's arrest occurred within a short period of time after the offense and within a small geographic area. In viewing the totality of the circumstances in this case, in our judgment, the identification testimony of Kesterson was sufficiently reliable to sustain defendant's conviction. See *People v. Bias* (1985), 131 Ill. App. 3d 98, 475 N.E.2d 253; *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 405 N.E.2d 1121.

■■ Defendant further claims that the testimony of Robert McClory, the victim's neighbor, was dubious and of uncertain value because the identification rested in large part upon defendant's mode of dress. Defendant cites *People v. Hughes* (1978), 59 Ill. App. 3d 860, 376 N.E.2d 372, and *People v. Moore* (1972), 6 Ill. App. 3d 932, 287 N.E.2d 130, in support of his position. A review of these cases reveals that they are distinguishable from the case at bar. In *Hughes* and *Moore* the victims did not see the defendants' faces but simply gave general descriptions of their clothing. In the case at bar, McClory testified that during the chase following the robbery he twice saw the profile of defendant's face when the defendant looked back. Further, the description McClory gave of the clothing defendant was wearing matched the clothing defendant had on when arrested shortly after the crime less than one block away. It has been held that the testimony of a single eyewitness is sufficient to support a conviction (*People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355; *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671), and we view McClory's identification of defendant as corroborative of the victim's identifica-

tion. Therefore, it is our opinion that the evidence as presented at trial was sufficient to prove defendant guilty beyond a reasonable doubt.

Defendant next contends that his conviction must be reversed since at the fitness hearing prior to trial the State presented uncontradicted expert testimony as to defendant's unfitness to stand trial. Despite the uncontradicted expert testimony, the State maintains that the trial court properly found the defendant fit for trial where the expert testimony indicated that defendant was able to understand the nature and purpose of the proceedings against him and the defendant testified that he was able to cooperate with his counsel.

On defendant's motion, a pretrial fitness hearing was held on November 25, 1986. Dr. Mathew Markos, employed as a psychiatrist by the circuit court of Cook County, testified on behalf of the State. Dr. Markos stated that he had reviewed a psychological summary prepared by Dr. Lisa Grossman of the Psychiatric Institute which listed defendant's admissions to psychiatric institutions. Specifically, Dr. Grossman's report indicated that the defendant had been admitted to various mental health facilities, including Manteno Mental Health Center, Chester Mental Health Center and Tinley Park Hospital. Dr. Grossman's report contained a current diagnosis of paranoid schizophrenia for defendant and concluded that he was unfit to stand trial. Dr. Markos further testified that he examined defendant for a period of approximately 50 minutes and his examination confirmed Dr. Grossman's impressions and he agreed with her diagnosis. Dr. Markos stated that defendant demonstrated delusions of both religiosity and persecution, including the beliefs that people were conspiring and plotting against him and that he was in direct communication with God and would be saved. Dr. Markos believed that Baldwin was aware of the charges against him, but that he was unfit to stand trial since he was unable to cooperate with counsel in his defense as a result of his abnormal and paranoid thinking. Dr. Markos stated that the defendant was hostile, angry and uncooperative during his examination. Further, Dr. Markos' opinion was that the defendant has a serious psychotic illness and was subject to involuntary admission in an in-patient psychiatric unit with constant supervision and monitoring of his medication and daily activities.

Following the testimony of Dr. Markos, defendant, who was 27 years of age at the time the offense was committed, testified at the pretrial fitness hearing. Defendant stated that he believed he was fit to stand trial. The trial judge then interrogated the defendant as to his understanding of the nature and purpose of the proceedings.

Defendant stated that he understood who the individuals in the courtroom were and what they were there to do. When the trial judge asked him whether he was cooperating with counsel, the defendant stated "yes—she's good." The defendant stated that he often felt depressed but stated he could nevertheless help his attorney because he considered the case "open and shut." When queried about his interview with Dr. Markos, the defendant related that the interview lasted for a very short while and that Dr. Markos had only asked him a couple of questions.

Following this testimony, defense counsel stated that although Dr. Markos believed defendant was unfit, she "must argue in his behalf" and expressed the hope that the court "will do what is best for him." In ruling that the defendant was fit to stand trial, the trial judge stated that the evidence was close, but resolved the case in favor of a finding of fitness based upon the presumption of fitness. Ill. Rev. Stat. 1985, ch. 38, par. 104–10.

■■ Fitness to stand trial is fundamental to an adversary system of justice. (*People v. McCullum* (1977), 66 Ill. 2d 306, 362 N.E.2d 307.) Once a defendant has raised a *bona fide* doubt of fitness, he cannot be presumed to possess the wherewithal necessary to assist counsel in gathering, coordinating and presenting the facts required to prove unfitness. (*McCullum*, 66 Ill. 2d 306, 362 N.E.2d 307.) Moreover, the metaphorical "bubble" of presumptive fitness bursts once a *bona fide* doubt of fitness is raised. (*People v. Burnside* (1977), 52 Ill. App. 3d 524, 367 N.E.2d 733.) The State bears the ultimate burden of proving a defendant's fitness to stand trial by a preponderance of the evidence. *People v. Bilyew* (1978), 73 Ill. 2d 294, 383 N.E.2d 212; *People v. Dominique* (1980), 86 Ill. App. 3d 794, 408 N.E.2d 280.

■■ ■ A trial court's determination of a defendant's fitness to stand trial rests largely within its discretion and will not be reversed absent a clear abuse of that discretion. (*People v. Wilson* (1984), 124 Ill. App. 3d 831, 464 N.E.2d 1158; *People v. Greene* (1981), 102 Ill. App. 3d 639, 430 N.E.2d 219.) In reaching its determination, the trial judge is not obliged to accept the opinions of psychiatrists on whether the defendant is fit to stand trial. (*People v. Williams* (1980), 87 Ill. App. 3d 860, 409 N.E.2d 439.) The trial judge must analyze and evaluate the factual bases for experts' opinions rather than rely on the ultimate opinions themselves. (*Bilyew*, 73 Ill. 2d 294, 383 N.E.2d 212.) It has repeatedly been noted that an incompetent defendant can hardly be accepted as a reliable witness to his own competency. *People v. McKinstray* (1964), 30 Ill. 2d 611, 198 N.E.2d 829; *Fitch v. Estelle* (5th Cir. 1979), 587 F.2d 773; *United States v. Johnson* (4th Cir. 1975),

527 F.2d 1104.

In *McKinstray*, a psychiatrist testified at a pretrial fitness hearing as to the defendant's prior hospitalizations, his hyperactivity and rambling conversations, and his previous head injury in an accident. The psychiatrist expressed the opinion that the defendant was suffering from organic brain disease and was unable to cooperate with his counsel in his defense. The defendant took the stand and testified that he did understand the nature of the charge against him and that he was willing to cooperate in his defense. The State offered no evidence and no objection was raised to the jury's finding of fitness. The supreme court, on appeal, held that the finding of fitness in such circumstances was error requiring reversal of the defendant's conviction. In holding that the defendant had rebutted the finding of fitness, the court ruled that fitness had not been shown by the defendant's own testimony, stating:

> "To accept defendant's opinion that he is able to co-operate with counsel in his defense, when the purpose of the hearing is to determine that very fact, would make a sham out of the sanity hearing, especially here where there is a history of a severe head injury and psychiatric treatment and the opinion of the sole medical witness that the defendant, although understanding the nature of the crime with which he was charged, was unable to co-operate with his counsel and was then committable to a mental institution." *McKinstray*, 30 Ill. 2d at 616-17, 198 N.E.2d at 832.

■ We find *McKinstray* to be controlling of the case at bar. At the pretrial fitness hearing here the trial judge engaged in a colloquy with defendant and sought defendant's own opinion about his fitness. Defendant stated that he believed he was fit to stand trial. The only other evidence presented was the uncontradicted testimony of the psychiatric expert, Dr. Markos, who testified that in his opinion defendant was suffering from an acute psychosis due to paranoid schizophrenia. Based on this diagnosis, it was Dr. Markos' opinion that defendant was unfit to stand trial and was unable to cooperate with his counsel. Only two witnesses testified at the initial fitness hearing, Dr. Markos and the defendant. Following Dr. Markos' testimony, the defendant made no motion as to the State's burden of proof. Since the expert testimony that defendant was unfit was uncontradicted in the trial court, it is our opinion, the trial court could not reject the expert's conclusion without other testimony or evidence that defendant was fit, other than defendant's own statement. (*McKinstray*, 30 Ill. 2d 611, 198 N.E.2d 829; see also *People v. Murphy*

(1987), 160 Ill. App. 3d 781, 513 N.E.2d 904.) While the trial court's determination that defendant is fit to stand trial must be given weight on review (*People v. Wilson* (1984), 124 Ill. App. 3d 831, 464 N.E.2d 1158), the trial court record must affirmatively show the exercise of judicial discretion and judgment insofar as a finding of fitness is concerned. Under the facts and circumstances of this case, we conclude that the record does not support the finding of fitness.

Defendant further argues that he received ineffective assistance of counsel where defense counsel did not investigate and discover certain psychiatric records until after the trial was over. At defendant's sentencing hearing on February 11, 1987, defense counsel moved for a psychiatric reevaluation of fitness. Defense counsel informed the court that after defendant's conviction, defendant had been sent to Cermak Hospital to be reevaluated for fitness. At the second fitness hearing, held on March 11, 1987, Dr. Markos testified that he examined the defendant on February 25, 1987. Dr. Markos stated that the defendant appeared to be in worse condition and more disorganized than he had been in November, prior to trial. Defendant expressed the view that the court proceedings were evidence of a plot or conspiracy against him. The defendant stated that he was hearing voices and believed he was being controlled by external forces. He also stated that he had been in direct communication with God and that God would punish Markos and other court officials. Dr. Markos found, based on his evaluation, that defendant was not fit for sentencing based on his inability to cooperate with counsel. Dr. Markos testified that defendant was angry and hostile at the time of his examination and concluded that defendant was suffering from paranoid delusions. Dr. Markos further stated that he believed defendant understood the nature of the charges against him but told the court he was not able to form an opinion as to whether defendant understood the functions of the courtroom officials.

Subsequently, the trial judge proceeded to question the defendant as to his ability to cooperate with his counsel. Defendant stated several times that his counsel was "all right, okay." The trial judge then asked defendant about Dr. Markos' statements regarding defendant's religious delusions and defendant responded by reading from the Bible. The defendant also stated that he thought his attorney's decision that he not take the stand had been a mistake because "he had plenty to say."

Subsequent to defendant's trial and sentencing, on March 16, 1987, defense counsel presented a motion for a new trial. At this time defense counsel presented for the first time certain records from the

Residential Treatment Unit of the Cook County Department of Corrections from 1986 when defendant was incarcerated pending trial. The Residential Treatment Unit is a 200-bed facility for inmates who are treatable and not in an acute state, but nonetheless are not able to function among the other jail inmates. (See *People v. Murphy* (1987), 160 Ill. App. 3d 781, 513 N.E.2d 904.) The records described the defendant's auditory hallucinations and incidents where defendant refused to eat for a period of up to five days. In addition, the records contained a note dated August 6, 1986, describing defendant as alert and oriented but showing flight of ideas, poor sleep, depressed mood and a recent suicide attempt. Another note dated September 5, 1986, described defendant as tense, defensive, angry and disoriented. A third note dated September 23, 1986, described defendant's agitations and a suicide attempt. The trial judge commented that the authors of the notes were unknown and that parts of the notes were illegible. The trial judge stated that he would admit those portions of the records that were consistent with testimony already heard, but that other parts of the record were irrelevant. Thereafter, the trial judge denied defendant's motion for a new trial and motion to reconsider fitness.

■ In alleging a claim for ineffective assistance of counsel, a defendant must prove that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246; *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) A reasonable probability is a probability sufficient to undermine confidence in the outcome, and defendant bears the burden of showing that, absent counsel's errors, the fact finder would have had a reasonable doubt respecting guilt. In determining whether there has been ineffective assistance, a court must consider the totality of the circumstances and determine whether counsel's assistance was reasonable considering all the circumstances. *Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

In the case at bar, defendant contends that his counsel's failure to present defendant's records from the Residential Treatment Unit until after trial and sentencing denied him the effective assistance of counsel. The State maintains that defense counsel's decision to proceed to trial prior to investigating defendant's mental condition, but instead to present defendant's own opinion of his fitness, was permis-

sible trial strategy which did not prejudice defendant. In *People v. Murphy* (1987), 160 Ill. App. 3d 781, 513 N.E.2d 904, the defense counsel was aware that the defendant had been assigned to the Residential Treatment Unit of Cook County jail and thought that fact was significant. Counsel also indicated that he had difficulties communicating with the defendant and that he believed the defendant had a problem. Since the outcome of the fitness hearing might have been different had this history been investigated and since the discovery of the psychiatric records might have led counsel to raise an insanity defense at trial, the court concluded that there was a showing of sufficient prejudice to defendant to warrant reversal and remand of the case for a new trial. See also *People v. Howard* (1979), 74 Ill. App. 3d 138, 392 N.E.2d 775.

▮▮ The undisclosed records from the Residential Treatment Unit in the instant case were compiled within one day to six weeks after the date of the offense and, therefore, would be clearly pertinent to the potential issue of insanity. A patient's psychiatric history is one of the most important criteria in making a diagnosis. (*People v. Anderson* (1986), 113 Ill. 2d 1, 495 N.E.2d 485.) We cannot ascertain any tactical advantage by defense counsel in failing to discover and introduce these records at the fitness hearings and cannot consider it sound strategy to defer the question of sanity until after a trial on the merits. We recognize the possible dilemma of a defense counsel who is aware of questions about both fitness and sanity but whose client denies the illness and opposes any attempt to obtain a ruling as to unfitness or insanity. Indeed, this court has expressed sympathy with a defense attorney who urged his client was competent in the face of contrary evidence, noting that his representation would quickly have terminated altogether had he spoken otherwise in front of his adamant client. (See *People v. Gravot* (1974), 19 Ill. App. 3d 486, 311 N.E.2d 699.) The clear weight of authority, however, holds that it is nonetheless counsel's responsibility to alert and inform the court about any doubts as to fitness. *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239; *People v. Schwab* (1986), 151 Ill. App. 3d 424, 502 N.E.2d 815; *People v. Rangel* (1982), 104 Ill. App. 3d 695.

▮▮ Accordingly, it is our determination that the inadequate investigation of the defendant's records and the issue of sanity, which was prejudicial to the fitness question and to the determination of a proper defense at trial, is sufficient to meet the standard for ineffective assistance of counsel. (*Strickland,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *Albanese,* 104 Ill. 2d 504, 473 N.E.2d 1246;

*Greer*, 79 Ill. 2d 103, 402 N.E.2d 203.) Sufficient prejudice has been demonstrated in this case since there is a reasonable probability that proper investigation might have produced a different trial result. (*Murphy*, 72 Ill. 2d 421, 381 N.E.2d 677; *Howard*, 74 Ill. App. 3d 138, 392 N.E.2d 775.) We, therefore, reverse defendant's conviction and remand this case for a new trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

MANNING, P.J., and O'CONNOR, J., concur.