THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDDIE HAYES, Defendant-Appellant.

First District (3rd Division)   No. 1—90—0115

Opinion filed April 29, 1992.

Alan D. Goldberg, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Barbara Bailey, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a bench trial, defendant, Eddie Hayes, was convicted of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1) of his seven-year-old son and sentenced to 25 years' imprisonment. On appeal, defendant asserts that (1) he received ineffective assistance of counsel because his defense counsel, who was under the mistaken assumption that the State had the burden of proving his sanity beyond a reasonable doubt, failed to produce available evidence of his insanity; (2) defense counsel's representation at the post-trial hearing, where defense counsel alleged his own ineffectiveness, violated defendant's sixth amendment right to conflict-free counsel; and (3) a new post-trial hearing is required because the trial court mistakenly believed that ineffective assistance of counsel was not a permissible basis for granting a motion for a new trial and forbade defense counsel from introducing evidence in support of his motion.

We reverse because there was ineffective assistance of counsel; the trial court did not apparently believe that ineffective assistance of counsel was a basis for granting a motion for a new trial; and the trial court denied defendant's request to present evidence in support of his ineffective assistance of counsel claim.

On March 28, 1988, defendant was found unfit to stand trial after being examined by the Psychiatric Institute's Drs. Gerson Kaplan and Mathew Markos, who examined defendant and found him mentally unfit to stand trial and unable to cooperate with counsel in his defense. They also stated that defendant was subject to involuntary admission during which time he should become fit to stand trial within one year with hospital psychiatric treatment. The doctors' opinions were based on their diagnosis that defendant exhibited signs of schizo-affective disorder with illogical erosion of speech inappropriate effect, elevated

mood, and diminished insight and judgment. In addition, defendant reported hearing voices and felt people were controlling his thoughts.

The trial court found defendant unfit for trial, likely to regain fitness within a year, and subject to involuntary admission. Defendant was sent to the Department of Mental Health and Developmental Disabilities, which was ordered to provide the court with periodic reports of defendant's mental condition.

On May 3, 1989, a restoration hearing was held and defendant was found fit to stand trial. Dr. Markos testified that defendant's mood had been stabilized with antipsychotic medication; there was no evidence of hallucinations or delusions; and defendant understood the court proceedings. Explaining that defendant will have schizophrenia all his life but can remain symptom free with medication, Dr. Markos concluded that defendant was mentally competent to stand trial provided that he remained on his medication.

At trial, Rochelle Price testified that she allowed her son, Eddie Price, to visit defendant, who was his father, on November 30, 1987. Defendant came to Ms. Price's home between 2:30 and 3 p.m. to take his son back to his apartment. Ms. Price told defendant that she wanted her son back before 10 p.m. Between 5:30 and 6 p.m., Eddie Price called his mother twice. Both times Ms. Price spoke to her son and defendant. She told defendant to bring their son home instead of letting him repeatedly call her. Defendant told her that he would be there shortly.

When defendant did not arrive, Ms. Price called his home four times, but got no answer. Between 11 and 11:30 p.m., she called again. Someone took the receiver off the hook, but did not say anything. Since Ms. Price heard her son's voice and music in the background, she and her brother went to defendant's home, arriving between 11:45 p.m. and 12 midnight.

Initially, no one answered the door. Ms. Price continued to knock and eventually defendant came to the door. He cracked it open and asked her what she wanted. She told defendant that she had come to get her son. When defendant responded that their son was spending the night with him, Ms. Price said that he could not because he had school in the morning. She then asked defendant to get her son ready and bring him out to her. Defendant went back into his apartment.

After 10 to 15 minutes had passed, Ms. Price knocked again. When defendant came to the door, she asked him what was taking so long. Defendant responded that their son would be there in a minute, then went back into the apartment. At that time, the police and fire-

fighters came up to the porch and told Ms. Price that they had a report of a little boy drowning in a bathtub.

The police called defendant to the door and identified themselves. When defendant opened the door, Ms. Price ran to the bathroom, where her son was facedown in a tub of water. The police took her outside while they tried to revive her son, who was later taken to the hospital where he died two days later. Defense counsel did not cross-examine Ms. Price.

Detective Thomas Sherry, who investigated the drowning, testified that the bathtub was partially filled with water and there was water on the floor. In the bedroom, Sherry found a boy's shoe next to a pair of men's leather gloves, which were wet. On the bed was a man's dress shirt, which was also wet. In the kitchen, Sherry found a similar boy's shoe and a man's wet belt draped over the back of a chair.

Jeanne Baker, a Chicago police dispatcher, testified that she received a 911 call at 12:27 a.m. on December 1, 1987, and forwarded it to the fire department ambulance. A copy of the 911 tape was played in court. The man's voice asked for an ambulance. When asked about the problem, he said, "I killed my son. I killed my son." When asked how he did that, the man responded that he drowned him a few minutes earlier. The man then stated that his last name was "Hayes."

The defense presented Dr. Mathew Markos, a forensic psychiatrist at the Psychiatric Institute, who testified that he examined defendant four times. On March 16, 1988, and October 13, 1988, he was found mentally not fit to stand trial. He was mentally fit with medication on January 24, 1989, and on August 24, 1989, Dr. Markos found defendant mentally fit with medication, but had no opinion on defendant's sanity.

Dr. Markos also testified that he had no opinion regarding defendant's sanity on December 1, 1987. Prior to the psychiatric examination, Dr. Markos reviewed previous psychiatric reports, including reports from Madden Mental Health Center, where defendant was admitted for three or four days in June 1987. There were also records from Chester Mental Health Center prior to the incident. Dr. Markos testified that defendant's records indicated that he had received in-patient psychiatric treatment with psychotropic medication. Prior to the incident, defendant had been diagnosed as having schizophrenia, paranoid-type psychoactivity, psychoactive substance abuse, which is drug abuse, and antisocial personality disorder.

Dr. Markos explained that schizophrenia is a psychotic mental disorder characterized by illogical thought and is different from drug-in-

duced psychosis. A schizophrenic can also have hallucinations and delusions.

In addition to being schizophrenic, Dr. Markos testified, defendant was also under the influence of psychoactive substances at the time of the offense; that is, four joints of marijuana laced with PCP and a six-pack of beer. Defendant told the doctor that he would not have killed his son if he had not taken the drugs.

Even though his report indicated that he did not have an opinion regarding defendant's sanity at the time of the incident, Dr. Markos testified that defendant was perhaps able to appreciate the wrongfulness of his act at the time of the incident. Dr. Markos based his opinion on the 911 tape of defendant's call to the police after the incident, his behavior soon after the incident, and on information defendant gave Dr. Markos. Dr. Markos further stated, however, that he was not sure whether defendant knew right from wrong or the consequences of his acts at the time of the incident. Dr. Markos related that defendant was stabilized with medicine at the time of his last examination.

On cross-examination, Dr. Markos testified that defendant stated that he had taken the drugs and a six-pack of beer two hours before the incident and wanted to enjoy his high. He was lying down when he asked his son for the time. Defendant became annoyed because he thought his son had given the wrong time. To teach him a lesson, defendant took a belt and hit his son a few times. Because the victim did not cry, defendant thought that he was not remorseful. Defendant became more enraged and decided to teach his son a lesson, so he dunked him underwater in the bathtub. Because he still did not cry and was acting tough, defendant thought that his son was being defiant. Therefore, defendant pushed him further under the water and kept pushing him until he realized that his son was dead. Defendant stated more than once that the incident was a result of the drugs he ingested. During the August 24, 1989, interview, Dr. Markos testified, defendant was remorseful.

Dr. Markos further testified that defendant was speaking coherently on the 911 tape immediately after the incident. Dr. Markos explained that being schizophrenic does not necessarily mean that the person is insane since it is possible for him to appreciate the criminality of his conduct.

During closing arguments, defense counsel stated that the State failed to prove its case because it had not proven that defendant had the mental competency at the time of the incident to form an intent. After the State explained the law on the insanity defense, the defense counsel replied that if Illinois law did require defendant to prove his

own insanity, that would be unconstitutional and contrary to the basic doctrine of Anglo-American law.

The trial court found that the State proved all the elements of first degree murder. The trial court also found that the intoxication defense could not stand in this case and that it did not believe that defendant was insane at the time of the offense.

In the motion for a new trial, the defense counsel stated that the measure of proof for the insanity defense is "very, very, very, very confusing." He contended that the State was required to disprove insanity since defendant raised the issue of his sanity and that he had proved insanity at the time of the incident beyond a reasonable doubt.

The trial judge stated that she was limited to granting a new trial only for a mistake of law or newly discovered evidence. She went on to say that she was very troubled by the way the defense tried the case and by his argument in favor of his motion for a new trial. Because defense counsel admitted that there was evidence of which he was aware that he did not present at trial, the trial court stated "possibly this case was tried in an incompetent manner." The trial court denied the motion for a new trial, stating that incompetence of the defense counsel was not an appropriate reason for a trial court to grant a new trial.

During the sentencing hearing, the trial court found defendant eligible for the death penalty, but mitigating factors precluded such a sentence. In mitigation, defendant presented his mother, Annie Hayes, who testified that defendant had been in and out of mental hospitals three or four times a year ever since his younger brother was killed in 1971. On the day of the incident, defendant had gone to the doctor because he was in a bad mental state and received medication, but did not take it. Ms. Hayes also testified that defendant had broken her finger once and cut his father's arm, requiring 35 stitches.

Defendant's brother, James Daniels, testified that defendant and his son were at Daniels' house between 8 and 9 p.m. on November 30, 1987. At that time, Eddie Price was in fine condition and defendant was loving toward him. When they left, defendant was in a bad mental state. Daniels had ordered defendant out of his house at that time, but did not think that Eddie Price was threatened by defendant's behavior.

After a brief statement by defendant, the trial court sentenced him to 25 years' imprisonment. The trial court stated that the mittimus should indicate that defendant needed medical treatment during his incarceration.

Defendant asserts that he received ineffective assistance of counsel because his attorney, who was under the mistaken assumption that the State had the burden of proving his sanity beyond a reasonable doubt, failed to produce available evidence of defendant's insanity. In his answer to discovery, defendant raised the affirmative defense of insanity, stating that "the State will not be able to prove its case in all essential elements because of the mental infirmity or insanity of the defendant at the time of the incident." After all the evidence had been heard at trial, defense counsel presented a motion for acquittal, in which he argued that the State had failed to prove his client's sanity beyond a reasonable doubt.

In his memorandum in support of the motion for a new trial, defense counsel admitted that he had been under the misapprehension that the State was required to prove defendant's mental competence beyond a reasonable doubt. Therefore, he stated, he did not present evidence that was in the record and available to the State. Defense counsel asserted that he should have presented defendant's mother, father, and brother to testify regarding defendant's mental condition on the day of the incident. He asserted that he should also have presented evidence of (1) a prescription bottle dated November 30, 1987; (2) reports from Cook County jail and hospital documenting that defendant had tried to set fire to the jail and went into a violent psychopathic episode, causing injury to himself and jail personnel; (3) evidence from the fitness hearing, which indicated that defendant had schizo-affective disorder and was subject to involuntary admission on March 3, 1988; and (4) doctors' reports that defendant's mental disorder went into remission with the administration of drugs.

Defendant relies on cases where there was ineffective assistance of counsel because the defense counsel misunderstood the applicable law. In *People v. Wright* (1986), 111 Ill. 2d 18, the defense counsel did not understand the affirmative defense of intoxication. In *People v. Rainey* (1986), 149 Ill. App. 3d 327, 331, the defense attorney misapprehended the law regarding the insanity defense. A new trial was ordered because the error deprived the defendant of a finding of guilty but mentally ill. No evidence of the defendant's mental condition was presented at trial. If the proper evidence had been placed before it at trial, the trial court stated, it would have found the defendant guilty but mentally ill. (*Rainey*, 149 Ill. App. 3d at 331.) Moreover, the court noted, the evidence was readily available to counsel since it was presented at the fitness and sentencing hearings. *Rainey*, 149 Ill. App. 3d at 331.

Defendant also cites failure-to-investigate cases. In *People v. Baldwin* (1989), 185 Ill. App. 3d 1079, 1091, the defense counsel's failure to investigate defendant's psychiatric records deprived him of his right to effective assistance of counsel since there was a reasonable probability that proper investigation might have produced a different trial result. The court stated that the psychiatric records compiled after the offense were clearly pertinent to the potential issue of insanity because a person's psychiatric history is one of the most important criteria in making a diagnosis. *Baldwin*, 185 Ill. App. 3d at 1090.

In *People v. Howard* (1979), 74 Ill. App. 3d 138, 141, the defense counsel's failure to investigate defendant's psychiatric records deprived him of his right to effective assistance of counsel since there was a reasonable probability that proper investigation might have produced a different trial result. The court in *People v. Dillard* (1990), 204 Ill. App. 3d 7, 10, stated that whether failure-to-investigate is incompetence depends on the value of the evidence and the closeness of the case. In *People v. Corder* (1982), 103 Ill. App. 3d 434, the defendant received ineffective assistance of counsel because his attorney failed to interview witnesses and present readily available evidence. Defendant also cites *People v. House* (1990), 141 Ill. 2d 323, 389, where the court ruled that cumulative errors committed by counsel constituted ineffective assistance of counsel.

The State responds that defendant's allegation of ineffective assistance of counsel was based on counsel's decision not to present certain witnesses, which was a matter of trial strategy, not incompetence. Even though defense counsel knew of the existence of evidence of defendant's mental condition through family members and hospital records prior to trial, the State contends, he decided to rely only on Dr. Markos' testimony.

■ The State's argument ignores the fact that the defense counsel misunderstood the applicable law on the affirmative defense of insanity. Not only did he admit that he misunderstood the law, but the answer to discovery and motion for acquittal argue that the State had the burden of proving defendant's sanity beyond a reasonable doubt. In deciding whether defendant was afforded effective assistance of counsel, it is necessary to determine the correctness of counsel's understanding of the applicable law.

Although it is true that the decision whether to present a particular witness is generally a matter of trial strategy, the defense counsel must first determine the defense theory appropriate under the circumstances. (*Wright*, 111 Ill. 2d at 27.) If counsel's decision not to raise a defense or present witnesses in support of that defense is at-

tributable to a misapprehension of the law, that is not a trial tactic or strategy. *Wright*, 111 Ill. 2d at 27.

The State then asserts that even if defense counsel made unprofessional errors, defendant was not prejudiced by those errors because the trial was a bench trial and the trial court was apprised of the law. The State further argues that the only evidence presented at trial regarding defendant's insanity was Dr. Markos' testimony that he did not have an opinion on defendant's sanity at the time of the incident. Therefore, the State contends, his testimony did not prove defendant was insane.

Furthermore, the State contends, there was sufficient evidence that defendant was sane at the time of the offense, including that defendant called the police and requested an ambulance right after drowning his son. In addition, the State claims, defendant was voluntarily under the influence of alcohol and marijuana laced with PCP, which was the cause of his drowning his son.

Defendant replies that the relevant inquiry for prejudice is whether the failures of the defense counsel undermine confidence in the judgment ordered by the trial court. Because the trial court could have found defendant not guilty by reason of insanity or guilty but mentally ill (Ill. Rev. Stat. 1987, ch. 38, par. 115—3), defendant argues, he was prejudiced by the evidence that defense counsel did not present. After sentencing, the trial judge ordered that the mittimus reflect that defendant should receive treatment during his incarceration.

Relying on *People v. Taylor* (1971), 1 Ill. App. 3d 1053, defendant also asserts that, even if his actions were performed while he was under the influence of drugs and alcohol, the possibility that he also had a mental disease or defect of which the killing was a product was not precluded. Even though there was evidence of both insanity and the ingestion of large amounts of alcohol in *Taylor*, the court did not discuss the effects of the drinking on the defendant's mental illness. *Taylor*, 1 Ill. App. 3d at 1062.

The sixth amendment of the United States Constitution guarantees the right to effective counsel in order to protect the fundamental right to a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 685-86, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063.) In order to establish ineffective assistance of counsel under *Strickland*, a defendant must prove that his counsel was deficient and that he was prejudiced by that deficiency. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Albanese* (1984), 104 Ill. 2d 504, 525.) Prejudice requires showing that the counsel's errors were so serious

that the defendant was deprived of a fair trial. (*Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.) The defendant must show that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the trial's outcome. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Defense counsel erred because he misunderstood the burden of proof for the insanity defense. Defendant presented Dr. Markos' testimony during which he discussed the history and current status of defendant's mental illness. If defense counsel had fully understood the insanity defense, he would have presented the testimony of family members who would have testified that defendant had had ongoing mental problems, was in a bad mental state on the day of the killing, and did not take medication that day. That testimony was presented at the sentencing hearing.

The trial judge stated that she thought the defense might have been incompetent, but did not think that that was grounds for a new trial. Her statement indicates that perhaps there was a reasonable probability that the result of the trial would have been different if the trial judge had heard the testimony of the family members at trial. Defense counsel's error was so egregious that it prejudiced defendant, resulting in ineffective assistance of counsel.

Next, defendant asserts that his sixth amendment right to conflict-free counsel was violated when his defense counsel alleged his own ineffective assistance in a post-trial motion. Even though the trial court acknowledged that the ineffectiveness allegation had potential merit, defendant argues, it took no steps to alleviate the conflict of interest. Defendant contends that when a judge is aware of facts showing the existence of a conflict of interest, she is obligated to either appoint substitute counsel or to advise the defendant of the existence of the conflict and determine whether he is willing to waive the conflict. In this trial, defendant was represented by a retained attorney.

Defendant relies on *Wood v. Georgia* (1981), 450 U.S. 261, 266, 67 L. Ed. 2d 220, 227, 101 S. Ct. 1097, 1100-01, where the defendants were represented by an attorney retained and paid for by the defendants' employer, who was the owner of an adult bookstore that was the subject of the criminal activity. When attorneys are hired and paid for by third parties, the Court stated, the trial court should take note of potential conflict. (*Wood*, 450 U.S. at 269, 67 L. Ed. 2d at 229, 101 S. Ct. at 1102.) Since the trial court knew that the defendants' employer

paid for their attorney and was pressing a constitutional challenge rather than arguing for leniency, the Supreme Court concluded that the trial court had a duty to inquire further into the possibility of actual conflict. *Wood*, 450 U.S. at 273, 67 L. Ed. 2d at 231, 101 S. Ct. at 1104.

The State responds that it was not the trial court's duty to advise or exercise any authority or control over defendant's selection of retained counsel. Furthermore, the State indicates, neither defendant nor his counsel requested that the trial court appoint new counsel to represent defendant in arguing the allegations of ineffective assistance of counsel. Only the parties hold the power to break the contract of representation entered into by a defendant and his privately retained attorney (*People v. Jackson* (1985), 131 Ill. App. 3d 128, 140), the State comments.

The State relies on *People v. Pecoraro* (1991), 144 Ill. 2d 1, 13, where retained counsel was not replaced at his hearing on post-trial motions based on ineffective assistance of counsel. The Illinois Supreme Court ruled that it is not within the trial court's authority to advise or exercise any influence or control over the selection of counsel by defendant, who was able to, and did, choose counsel of his own choice. (*Pecoraro*, 144 Ill. 2d at 15.) Moreover, the court stated, the trial court could not force defendant to retain counsel other than that chosen by defendant. *Pecoraro*, 144 Ill. 2d at 15.

■ *Pecoraro* does not preclude the trial court from taking action if it sees incompetence. If the incompetency is related to an insanity issue, where defendant obviously does not understand what is happening, the trial court must step in to protect defendant. The ultimate focus of the trial court's inquiry must be on the underlying conduct alleged to have prejudiced the defendant. *People v. Jameson* (1987), 155 Ill. App. 3d 650, 663.

The trial judge in this case should have at least inquired into the possibility of actual conflict. She expressed her displeasure with the defense counsel's representation of defendant, recognizing that there was possible neglect of defendant's case. Since ineffective assistance of counsel related to defendant's sanity was raised, further inquiry would have revealed that it was necessary for the trial judge to step in to protect defendant in this case.

■ Next, defendant correctly asserts that the trial court mistakenly believed that ineffective assistance of counsel was not a permissible basis for granting a motion for a new trial. A new trial can be granted based on ineffective assistance of counsel if there is substantial prejudice. *People v. Krankel* (1984), 102 Ill. 2d 181, 189; *People v.*

*Brandon* (1987), 157 Ill. App. 3d 835, 845; *People v. Jackson* (1987), 158 Ill. App. 3d 394, 402.

■ Finally, the trial court improperly denied defendant's request to present evidence or make an offer of proof regarding his mental condition in support of the ineffective assistance of counsel claim. The evaluation of post-trial claims of ineffective assistance of counsel requires examination of the factual assertions underlying the claim. *Jackson*, 158 Ill. App. 3d at 401.

Based on the foregoing, defendant's conviction is reversed and remanded for a new trial.

Reversed and remanded.

GREIMAN, P.J., and RIZZI, J., concur.